HADDEN et al. v. NATCHAUG SILK CO. et al.

(Circuit Court, S. D. New York. January 13, 1898.)

1. COURTS—FORMER DECISION.
The court will follow its prior decisions in the same case, though made by another judge, and refuse to consider de novo questions expressly or impliedly determined by orders and judgments entered in a former hearing.

2. FRAUDULENT TRANSFER—RES JUDICATA.
Attachment and execution liens on personal property will not be set aside for fraud affecting the obligation on which the judgment was recovered, when such judgment has been held valid on a former hearing of the case.

3. SALES—RESCISSION—ELECTION.
In an action by a judgment creditor to set aside a transfer of personal property, and attachment and execution liens thereon, as fraudulent, it is immaterial that the goods for which he recovered his judgment went into the manufacture of the goods in controversy, as by failing to rescind he elected to treat the sale as valid, and is precluded from following the goods. 20 C. C. A. 494, 74 Fed. 429, followed.

In Equity.

This action was brought originally in the supreme court of New York by the complainants as judgment creditors of the Natchaug Silk Company to set aside alleged fraudulent transfers of the property of said company made by its president and general manager, as well as liens by attachment and execution, by virtue of which liens and transfers the defendants claim title to said property. . The bill also prays for a receiver and an injunction restraining the defendants from disposing of the property in question during the pendency of the action. A temporary injunction, granted in the state court, was continued by this court after removal of the cause by the defendants. Two motions to dissolve the injunction were made and denied. From the order denying the last motion an appeal was taken to the circuit court of appeals. The opinion then delivered is reported in 20 C. C. A. 494, 74 Fed. 429. After the proofs were taken the defendants renewed their motion to dissolve, and this time the motion was granted by this court. An application having been made by the complainants for a rehearing, the court adhered to its. former decision and dissolved the injunction. On both occasions short opinions were delivered. The bill was amended by leave of the court, and additional proof was taken relating to the validity of the Pangburn notes.

William B. Putney and Henry B. Twombly, for complainants.
Edward Winslow Paige, for defendants.

COXE, District Judge. It is, of course, my duty to follow the decisions of this court and of the circuit court of appeals even though a different opinion may be entertained upon some of the propositions involved. Different judges do not make different courts. When the circuit court has spoken through any of its judges its decision should be, and generally is, regarded as controlling upon all the others. This is the spirit of American jurisprudence. We sacrifice much to precedent. A proposition once decided between the same parties on similar facts must stand decided. It is of little moment that the decision was made by another than the sitting judge. If entitled to any consideration this circumstance gives the decision even greater weight. A judge may change his own mind; he cannot change the mind of another. Manifestly, then, the first inquiry is, what has been already decided, and what, if anything, is left open for decision? The motion to dissolve the injunction brought up the

entire controversy for review. With the injunction removed it was possible for the defendants to defeat the main purpose of the action by disposing of the property in dispute. In such circumstances it is plain that the court would have preserved "the existing state of things" if it had supposed that there was a reasonable chance of the complainants' success. The decision dissolving the injunction could have proceeded only upon the theory that the defendants' title to the goods in dispute was good and the complainants' title bad. So much for the effect of the decisions in general. I proceed to the examination of them in detail.

First. The circuit court of appeals. It may fairly be said that the logical conclusion to be drawn from the language of the opinion regarding the first question considered is that the court would have held Chaffee's transfers valid if it appeared that he was vested with unlimited authority. The court holds that "the decisions of the state of Connecticut apparently recognize that a president and unlimited general manager of one of its manufacturing corporations is vested with" power "to sell a large portion of the personal property of the company to one of its creditors in part payment of its debt," and that such a transfer is valid even though the company was insolvent and known by the president to be insolvent at the time of the transfer. In an able opinion the court of appeals of Maryland took an entirely different view of the law. Hadden v. Linville, 38 Atl. 40. They were in no way controlled by the decision of the circuit court of appeals, but they proceed to "distinguish" as follows:

"The court did not decide as to the power of Chaffee. As to that, the question was of a character which cannot be determined on affidavits. Nor does he decide what the power of a general manager is in Connecticut, but only what it 'apparently is,' and that it is subject to modification by other facts than those before him in that case."

This distinction, based largely upon the use of the word "apparently" by the circuit court of appeals, is too shadowy to be accepted by this court. It is more apparent than real. I have little doubt that upon the proof then before it the court would have held the sales by Chaffee valid, and failed to do so only because the question "may be controlled by the facts which may subsequently appear as to any limitation of Chaffee's actual powers of which the bank had knowledge."

The only question left open upon this branch of the controversy is whether the subsequent proof discloses such limitation, and also whether the acts of Chaffee were subsequently ratified by the directors. Upon the other question—the validity of the notes upon which the Pangburn judgment is based—the court decided nothing of importance, leaving the question of fact for further examination. The decision of the circuit court of appeals was based wholly upon affidavits, but an examination of the briefs shows that with one exception every proposition now argued was there argued, but, of course, upon a less ample and reliable record. The contention that the bank and the silk company were jointly engaged in a scheme to defraud the complainants does not seem to have been presented. This decision was rendered in May, 1896. When the case was next considered

in November, 1896, the motion to vacate was argued upon full proofs and the most elaborate briefs. In granting the motion upon certain conditions, subsequently supplied, the circuit court begins its opinion with the following proposition:

"Under the decision of the court of appeals two questions and two only are left open, viz.: the sufficiency of the assignment of title to the silk by Chaffee, and the validity of the notes assigned to Pangburn as obligations of the Natchaug Silk Company."

The court then proceeds to close the latter question by holding the following propositions: First, that four of the notes assigned to Pangburn were valid in any view of the case. Second, that "the delivery of a note for indebtedness evidenced by an old one does not extinguish the indebtedness nor render the old note void, unless the creditor by discounting it and crediting the proceeds, or in some other way, agrees to accept it in payment." Third, that though other notes were given in renewal of the notes sold to Pangburn the original debt was not thereby extinguished, and he could recover upon the notes held by him by surrendering all subsequent notes which were delivered as evidences of such debt. Fourth, that Pangburn was manifestly entitled to recover a greater sum than the value of the property attached. An application for a rehearing was made by the complainants. The precise grounds for the application do not appear; inferentially, however, it was based upon an alleged mistake as to the value of the property attached. In denying this motion the court said:

"The mistake which was made as to the value of the goods attached, in no way affected the decision of this motion, which held that the bank was entitled to recover not only on the notes for which no renewals were found, but also on those where the bill book showed renewals, provided all the notes of the renewal series were filed. Upon re-examination of the case I am still of the opinion that it is for the plaintiffs to show failure of consideration for the original notes, and that the proof does not do this."

On the 26th of January, 1897, an order, reciting that all of the notes of each series were deposited with the court, was signed and entered, dissolving the injunction. I cannot escape the conviction that this decision establishes the proposition that the transfer to Pangburn was not fraudulent, and that his attachment and judgment are good and valid unless defeated by proof that the original notes were without consideration; in other words, that the debt was not owing from the silk company to the bank. So that upon the law which this court is constrained to accept the case stands thus: The complainants must establish the following propositions: First. Such a limitation upon Chaffee's authority as to render the transfer or sale by him unauthorized. Second. That his acts were not ratified by the directors. Third. That the silk company was not indebted to the bank upon the notes sold to Pangburn. Unless the complainants establish all three of these propositions they cannot succeed; if they fail on any one the bill must be dismissed. With the issues thus narrowed there can be but one result. I am unable to see that the proof limits the authority of Chaffee, or that the case is any stronger for the complainants than when the facts appeared by affi-

davit. Chaffee was general manager from the organization of the company, and by virtue of the by-laws was given "entire charge of the business and affairs of said company." In addition he was president of the company, and had, in fact, managed the company's affairs with a power autocratic and unquestioned. The directors did nothing. They were of the conventional American type—mere figureheads and dummies. Their names might serve to decorate the company's paper and cajole the public into thinking that their connection with it was a guaranty of its financial ability, but, in fact, they took no part in its affairs, and, for all practical purposes, might as well have resided in Patagonia or Siam. One of them thus describes his connection with the company:

"I took no active part in the management of the company. I attended some of the meetings of the directors. Q. Did you do anything at the meetings you attended? A. Yes, generally smoked pretty good cigars. Had a pretty good time. Incidentally discussed business. Did not interfere with Mr. Chaffee's business. Always left everything to him. Never questioned him as to what he did with the manufactured silk, whether he sold it or turned it out for debt. There was not the slightest question as to his power on my part or the other directors. He could do anything he liked."

In leaving the affairs of the silk company in the hands of one man these directors were no more reprehensible than thousands of others who are daily doing the same thing. It is not likely that directors in this country will take any higher view of their responsibilities or exhibit any increased diligence in the discharge of their duties so long as the rule continues to be maintained that ignorance is a sure protection against liability. The proof upon this branch of the case is fully as strong for the defendants as when the facts appeared by affidavit only. No limitation upon Chaffee's authority, known to the bank, has been shown.

Assuming that Chaffee acted beyond the scope of his authority, the question still remains, did the directors ratify his acts by not objecting after they had full knowledge of what he had done? The following authorities sustain the proposition that where an act is done by the president or general manager of a corporation, which requires the concurrence of the board to make it valid, if the transaction is made known to them and they do not dissent within a reasonable time, their intelligent acquiescence is tantamount to an affirmative ratification: Indianapolis Rolling-Mill v. St. Louis, Ft. S. & W. R., 120 U. S. 256, 7 Sup. Ct. 542; Pennsylvania R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770; Construction Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36; Creswell v. Lanahan, 101 U. S. 347.

But if the court should reach the conclusion that all the transfers from Chaffee are void the complainants could not succeed; there would still be standing as an insuperable barrier across their path the Pangburn judgment, which, without doubt, has been held valid by this court. Whether the claim of Pangburn should be limited to the notes actually transferred to him and described in the petition of the receiver as "doubtful debts," presumably worth but $200, is a question which was decided by this court in dissolving the injunc-

tion.   So, also, is the question that the holder of the original notes can recover by surrendering all subsequent notes delivered as evidences of such debt.   The point that the bank was implicated, through the knowledge of its cashier who was also director of the silk company, in the fraudulent representations made by the silk company, which induced the sale by the complainants, was there presented and fully argued.   The question is not referred to in the opinions, it is true, but this may be due to the fact that the court thought the evidence insufficient to establish fraud on the part of the bank.   That the point was considered there can be no doubt. Assuming it to be true, I deem the fact immaterial, that the goods sold by the complainants went into the manufacture of the silk which is the subject of this controversy.   The complainants, upon the theory that they were defrauded, might have disaffirmed the sale and followed their goods.   They did not do this, but on the contrary proceeded upon the theory that the sale was valid and passed the title to the silk company.   The proofs now are somewhat more ample upon the question of the Pangburn notes than at the former hearing, but are insufficient to warrant the court in disregarding the decision then made.   The notes in the possession of the court should be destroyed or canceled, and there should be no doubt that none of them is included in the claim of the bank against the silk company.   As an appeal may be taken, no injury can result in postponing the cancellation until the litigation is finally ended.   Upon the whole case I am convinced that this court is precluded from examining these questions de novo, and that upon the law, as it now stands, the bill must be dismissed.