JOHNSON v. MANHATTAN RAILWAY CO. ET AL.*

No. 711. Argued April 18, 19, 1933.—Decided May 29, 1933.

---

*Together with No. 721, *Boehm* v. *Manhattan Railway Co. et al.*

*Mr. Charles Franklin*, with whom *Messrs. Alfred C. B. McNevin* and *Herbert Goldmark* were on the brief, for Johnson, petitioner.

482

*Mr. Louis Boehm,* with whom *Messrs. Harry Shulman* and *Elliot S. Benedict* were on the brief, for Boehm, petitioner.

*Mr. Nathan L. Miller,* with whom *Messrs. Cloyd Laporte, William W. Miller, Carl M. Owen,* and *Harold J. Gallagher* were on the brief, for Dowling et al., Receivers of the Interborough Rapid Transit Co., respondents.

*Mr. H. C. McCollom,* with whom *Mr. Edward Cornell* was on the brief, for the Central Hanover Bank & Trust Co., Trustee, respondent.

*Messrs. John W. Davis* and *Edwin S. S. Sunderland* submitted for the Committees acting for Interborough Rapid Transit Company 7% Secured Notes 'et al., respondents.

*Mr. Cloyd Laporte* submitted for the Committee for the Protection of the Holders of Ten-Year Six Per Cent. Gold Notes of Interborough Rapid Transit Co., respondent.

*Messrs. Charles E. Hughes, Jr.,* and *Allen S. Hubbard* submitted for Roberts, Receiver for Manhattan Railway Co., respondent.

*Messrs. Paxton Blair, Boykin C. Wright,* and *Clifton Murphy* submitted for Merle-Smith et al., constituting the Protective Committee for Manhattan Railway Company Consolidated Mortgage 4% Bonds, respondents.

*Messrs. James L. Quackenbush* and *Louis S. Carpenter* submitted for the Interborough Rapid Transit Co., respondent.

*Messrs. Charles H. Tuttle, Paris S. Russell,* and *W. K. Petigrue* submitted for The American Brake Shoe & Foundry Co., respondent.

*Messrs. Arthur J. W. Hilly, Edgar J. Koehler,* and *Frank E. Carstarphen,* by leave of Court, filed a brief on behalf of the City of New York, as *amicus curiae.*

Mr. Justice Van Devanter delivered the opinion of the Court.

These cases exhibit an acute controversy between the Senior Circuit Judge of the Second Circuit and the District Judges of the Southern District of New York respecting the authority of a judge specially assigned to that district—particularly the Senior Circuit Judge when so assigned—to entertain an application for the appointment of receivers in a suit in equity.

Among the rules of the District Court for that district was one whereby a particular trust company was designated as a standing receiver in bankruptcy, and effect was given to that rule in all bankruptcy proceedings. There was no such rule respecting receivers in suits in equity, and the District Judges all regarded themselves as free in appointing such receivers to select any individual or trust company deemed competent and suitable for the particular task. But not infrequently they selected as an equity receiver the trust company which was designated by rule as a standing receiver in bankruptcy proceedings. The nature and importance of the equity receiverships for which a trust company was selected are not clearly disclosed in this record, but it is reasonably apparent that in no instance was the receivership at all comparable in scope or importance with the railroad receivership with which the present litigation is concerned.

In 1930 the Senior Circuit Judge, acting under 28 U.S.C., § 22, and reciting that the public interest required it, assigned himself to hold at any time a session or sessions of the District Court for that district, for the purpose of trying causes and entertaining and disposing of any matter which might come before him.

In June, 1932, at the suggestion of counsel in an intended suit in equity for the appointment of receivers for the Fox Theatres Corporation, the Senior Circuit Judge

sought informally to persuade one or more of the District Judges that a trust company ought not to be selected as receiver, but failed to secure an acceptance of his view. Thereupon, acting under his assignment of 1930, he entertained the application for a receiver and appointed individual receivers.

This action of the Circuit Judge was followed a few days later by the adoption and promulgation by the District Judges of two new rules, known as 1-a and 11-a, effective July 1, 1932, and apparently designed to limit or restrict the action of assigned judges in that district. These rules will be set forth later on.

August 25, 1932, counsel representing the parties in an intended suit in equity by the American Brake Shoe and Foundry Company against the Interborough Rapid Transit Company, informed the Senior Circuit Judge that an application for the appointment of receivers would be made in that suit, and laid before him an affidavit, entitled therein, alleging generally that a trust company or other corporation would not be a suitable receiver, and particularly that the defendant company's complicated and involved daily operations, its enormous staff of operating officials and employees, its contracts and relations with the City of New York, and the use of its facilities by the public, required that the receiver or receivers be a competent individual or individuals who could give constant and undivided attention to the matter. Thereupon the Senior Circuit Judge, conceiving that a District Judge might select a corporate receiver and that this would be unwise and should be prevented,[1] concluded to assign, and did assign, himself to hold a District Court for the Southern District, " particularly to hear and determine all applications and proceedings " in the intended

---

[1] See *American Brake Shoe & Foundry Co.* v. *Interborough Rapid Transit Co.*, 1 F.Supp. 820, 825–827.

suit for a period beginning that day and continuing until the suit came to an end. This assignment, like that of 1930, recited that it was made under 28 U.S.C., § 22, and that the public interest required it.

The statute referred to in the two assignments provides:

"Sec. 22. The Chief Justice of the United States, or the circuit justice of any judicial circuit, or the senior circuit judge thereof, may, if the public interest requires, designate and assign any circuit judge of a judicial circuit to hold a district court within such circuit. . . .

"During the period of service of any judge designated and assigned under this chapter, he shall have all the powers, and rights, and perform all the duties, of a judge of the district, . . . to which he has been assigned (excepting the power of appointment to a statutory position or of permanent designation of newspaper or depository of funds)."

The new rules adopted by the District Judges declare:

"1-a. Any judge designated to sit in the District Court for the Southern District of New York, shall do such work only as may be assigned to him by the senior district judge."

"11-a. All applications for the appointment of receivers in equity causes, in bankruptcy causes and any other causes (except a receiver in bankruptcy may be appointed by a referee as provided in the Bankruptcy Rules), shall be made to the judge assigned [meaning assigned by the District Judges in their division of business] to hold the Bankruptcy and Motion Part of the business of the court and to no other judge."

Immediately after making the assignment last mentioned, the Senior Circuit Judge turned to 28 U.S.C., § 27, which declares:

"In districts having more than one district judge, the judges may agree upon a division of business and assign-

ment of cases for trial in said district; but in case they do not so agree, the Senior Circuit Judge of the Circuit in which the district lies shall make all necessary orders for the division of business and the assignment of cases for trial in said District ";—

and he then made and signed the following order:

"And whereas, Martin T. Manton, a Circuit Judge of the Second Judicial Circuit of the United States designated and assigned to hold a District Court in the Southern District of New York in said Circuit, and acting as District Judge for the Southern District of New York in this Second Judicial Circuit, does not agree upon the division of business and assignment of cases for trial in the Southern District of New York, as provided in and pursuant to the rules of court for the Southern District of New York, heretofore adopted by the then United States District Judges for the Southern District of New York; it is hereby

"Ordered, adjudged and decreed that, for a period of thirty days beginning with this day, all applications for the appointment of receivers in equity causes in the Southern District of New York may be made not only to the district judge designated to hear such application pursuant to Rule 11-a of the General Rules of the District Court for the Southern District of New York, but also to Martin T. Manton, Circuit Judge designated to act as District Judge to hold a District Court for the Southern District of New York."

That order was filed and entered in the District Court, and on August 26 the American Brake Shoe and Foundry Company filed therein its bill of complaint against the Interborough Rapid Transit Company, together with the affidavit before mentioned. The bill disclosed that the plaintiff was a simple contract creditor, suing on its own behalf and on behalf of all other creditors who might choose to join in the suit, and that the defendant was en-

gaged as a public carrier in operating an extensive system of transportation within the City of New York and its environs; set forth with much detail that the defendant was in greatly embarrassed financial condition, had made default in the payment of taxes and other claims, and could not avoid making default in the payment of instalments of interest and principal about to fall due upon bonds and other obligations secured by mortgages; alleged that its properties were in danger of being dismembered and largely wasted through competitive efforts by its many creditors to obtain satisfaction of their claims, that such wasteful strife would seriously impair and interfere with the discharge of its duties as a public carrier, that its properties could be preserved for equitable distribution among those entitled thereto only through the intervention of a court of equity, and that such intervention would make for a realization for all of the creditors of a substantially larger amount than if that relief were not granted. The prayer was that receivers be appointed to take charge of and preserve the defendant's properties, continue the operation of its railroad system for the accommodation of the public, and collect and properly appropriate the income until the final decree, and that the court marshal and administer the assets and by its decree ascertain and enforce the rights, liens and equities of the several creditors.

The suit plainly was within the jurisdiction of the District Court as a federal court. The parties were citizens of different states and the amount or value in controversy was in excess of the minimum prescribed in the jurisdictional statute.

Immediately after the bill was filed the defendant appeared and, conformably to a resolution of its board of directors, answered the bill, admitted the allegations therein, joined in the plaintiff's prayer and consented to the appointment of receivers.

Later in the same day, August 26, the parties appeared before the Senior Circuit Judge, sitting under the assignment and order of the day before; and, after examining the bill, affidavit and answer, the judge made an interlocutory order appointing temporary receivers and granting the usual temporary injunction against the institution of suits against the defendant company, except on leave granted in that suit. The order also directed (1) that on September 22, the parties show cause before him, as such assigned Circuit Judge, why the receivership should not be continued during the pendency of the suit; and (2) that at that hearing "any other creditor of the defendant or other party in interest may be heard."

The receivers took possession of the properties and have since been operating them under orders made from time to time by the Senior Circuit Judge in that suit.

September 6, the Manhattan Railway Company petitioned for leave to intervene as a defendant in the Interborough receivership suit and set forth in the petition many facts showing the Manhattan's serious financial embarrassment; and alleged that it owned a substantial part of the property held and operated by the Interborough Company and included in the receivership, and that the same was held and operated by the Interborough Company under a lease from the Manhattan Company. The petition referred to and claimed the benefit of various provisions in the lease defining the obligations of the Interborough Company thereunder, and pointed out that in several particulars the Interborough had made default in the performance of its obligations and that these defaults were admitted by the Interborough's answer. The petition prayed that the Manhattan Company be made a party defendant in the receivership suit for the protection of its interests and those of its creditors; that the receivership be extended so as to embrace the interest of the Manhattan Company, but without prejudicing or impairing

any of its rights against the Interborough Company or the latter's receivers, and that such receivers be required to keep separate accounts in respect of the railroads owned by the Manhattan Company. Upon the presentation of this petition the Senior Circuit Judge made an interlocutory order granting its several prayers, appointing a separate temporary receiver for the Manhattan Company and its assets, and granting the usual injunction. This order also required the parties to show cause on September 22, why the extension of the receivership to the Manhattan Company and its assets should not be continued during the pendency of the suit, and provided that upon such hearing "any other creditor of the defendant or other party in interest may be heard."

Several committees representing different groups of creditors, some of the Interborough Company and others of the Manhattan Company, were permitted to intervene and become parties, and many orders were made relating to the employment of counsel for the receivers and the conduct of the receivership.

On the return day of the rules to show cause the parties and many others in interest appeared and were heard by the Senior Circuit Judge; but Benjamin F. Johnson and Lillian Boehm, to be mentioned presently, were not among those who appeared. Both refrained from participating in the hearing or otherwise appearing in the suit. As a result of the hearing, the Senior Circuit Judge, on September 28, made an order or decree continuing the receiverships of the Interborough and Manhattan during the further pendency of the suit.

In the meantime another separate suit for the appointment of receivers of the Manhattan and Interborough companies was commenced, and that suit needs now to be described.

On September 21, Benjamin F. Johnson, a minority shareholder of the Manhattan Company, filed in the Dis-

trict Court an independent bill against that company and its temporary receiver, the Interborough Company and its temporary receivers, and the American Brake Shoe and Foundry Company. He sued on behalf of himself and all other shareholders in the Manhattan Company who might join; and his right to sue the Manhattan and Interborough companies and their temporary receivers was based upon an order giving him leave so to do, which was made by the District Judge sitting in the motion part of the court, notwithstanding the injunction granted by the Senior Circuit Judge when the temporary receivers were appointed. Johnson in his bill asserted a cause of action on behalf of the Manhattan Company against the Interborough Company arising out of the lease before described, and also a right to an accounting in that connection. He further asserted there was an urgent need for receivers for both companies and prayed for the appointment of separate receivers for each of them. By his bill he also assailed the authority of the Senior Circuit Judge to entertain the suit of the American Brake Shoe Company or to appoint receivers or make any order or decree therein; and asserted that all of the orders and decrees passed by that judge were those of an usurper and wholly void, (1) because there was no public interest requiring the assignment of a Circuit Judge to sit in the suit, and therefore the assignment under which the judge was acting was without lawful basis and void; (2) because the District Judges were not in disagreement, but in full accord, respecting the division of business and therefore the order of the Senior Circuit Judge respecting a division of business, whereby he directed that applications for the appointment of receivers in equity might be made to him, was without lawful basis and void; (3) because he was a designated judge within the meaning of Rule 1-a of the District Court, and under that rule could do " such work only " as might be committed to him by the Senior

District Judge, and none had been so committed; and (4) because Rule 11-a of the District Court required all applications for the appointment of receivers in equity to be made to the judge assigned by the district judges to hold the motion part of the court, and " to no other judge," and not only was the Senior Circuit Judge not assigned to that part of the court but a District Judge duly assigned thereto was sitting therein at the time, and willing and ready to act upon any such application. Upon these grounds Johnson prayed that the Senior Circuit Judge's assignment to the District Court for the purpose of hearing matters in the American Brake Shoe Company's suit, his division-of-business order directing that applications for the appointing of receivers in equity might be made to him, his orders appointing temporary receivers for the Interborough Company and a temporary receiver for the Manhattan Company, and all other orders made by him in the suit, be held void and vacated.

On the same day, September 21, Lillian Boehm was given leave, by the District Judge sitting in the motion part of the court, to intervene as a party plaintiff in Johnson's suit, which she did. She was a stockholder in the Manhattan Company and a secured creditor of the Interborough Company. In her bill of intervention she asserted there was imperative need for the appointment of a receiver to take charge of and to preserve the property of the Interborough Company, continue the operation of its railroad system for the accommodation of the public, and collect and properly appropriate the income thereof until the final decree; assailed the orders of the Senior Circuit Judge in the American Brake Shoe Company's suit upon the same grounds that were set forth in Johnson's bill; and joined in the prayers of his bill.

Johnson and Boehm both subsequently filed petitions supplemental to their original bills and in these supplements the Senior Circuit Judge's order of September 28,

continuing the Interborough and Manhattan receiverships was assailed as void upon the grounds theretofore advanced against the orders appointing temporary receivers. Thenceforth the assault was directed chiefly against the order continuing the receiverships, the orders naming temporary receivers having served their purpose and being superseded.

In their bills and supplements Johnson and Boehm also complained that the receivers appointed for the Interborough and Manhattan companies in the earlier suit of the American Brake Shoe Company had theretofore had, or then had, relations with the Interborough and Manhattan Companies and with particular groups of the creditors of one or the other of those companies which would tend to prevent them from discharging their duties impartially and with due regard to the rights of all who were parties in interest. But there was no claim that either Johnson or Boehm had presented this complaint in the suit wherein the receivers were appointed and in which they were acting.

In the Johnson suit Johnson and Boehm separately procured, from the District Judge sitting in the motion part of the court, rules requiring the defendants in that suit to show cause on October 4 why orders should not be granted vacating (1) the Senior Circuit Judge's assignment of himself to sit in the District Court to hear matters in the American Brake Shoe Company's suit, (2) his division-of-business order directing that applications for the appointment of receivers in equity might be made to him, and (3) his several orders in the American Brake Shoe Company's suit, including those appointing receivers; and why independent receivers for the Manhattan Company, and likewise for the Interborough Company, should not be appointed in the Johnson suit.

On the return day of these rules to show cause the parties appeared before the District Judge sitting in the

motion part of the court, and were heard by him. At that time answers to the bills and supplements had not been filed and as yet were not due. Affidavits were tendered by the defendants to refute the complaint questioning the personal fitness of the receivers for the service for which they were appointed. But the District Judge put this and related questions of fact to one side as being outside the scope of the hearing, which he ruled was confined to the question whether the Senior Circuit Judge could entertain the application for receivers in the suit of the American Brake Shoe Company and make the orders which were assailed.

The outcome of the hearing was that the District Judge held that the Senior Circuit Judge's assignment of himself to the District Court to hear and determine all matters in the American Brake Shoe Company's suit was void, because, even if empowered by § 22 to make a general assignment of himself to hold the District Court, he was without authority to make a selective assignment, as by designating the case which he was to hear or the part of the court in which he was to sit; that his division-of-business order was void, because under § 27 a failure of the District Judges to agree upon the division of business is a condition precedent to action on that subject by the Senior Circuit Judge, and there had been no such failure to agree; that rules 1-a and 11-a of the District Court are valid and operate to limit the jurisdiction of all judges assigned to the District Court, whether they be District Judges or Circuit Judges, and as the orders of the Senior Circuit Judge in the American Brake Shoe Company's suit were all made in contravention of those rules they were void; and that these orders could not be supported on the theory that he was a de facto judge, for he was not such but merely an intruder.[2] The District

---

[2] *Johnson* v. *Manhattan Ry. Co.*, 1 F.Supp. 809.

Judge accordingly passed a decree, on October 18, vacating all decrees and orders made by the Senior Circuit Judge in the American Brake Shoe Company's suit. But just before giving that decree the District Judge passed another, on his own motion and over the objection of the parties to the suit of the American Brake Shoe Company, consolidating that suit and the Johnson suit. Consolidation was ordered because, as the District Judge said, there was in his mind " a residuum of doubt " whether, so long as the suits remained separate, an order properly could be passed in the Johnson suit vacating the orders made in the other and earlier suit.

On appeals to the Circuit Court of Appeals the consolidating decree and the vacating decree were both reversed.[3] Johnson and Boehm then separately petitioned this Court for a review on certiorari and the petitions were granted.

Counsel for petitioners, now assume that in granting the petitions this Court intended to review the decision of the Circuit Court of Appeals on the appeal from the consolidating decree, as well as its decision on the appeal from the vacating decree; but the assumption is without any basis. In the petitions complaint was made of the reversal of the vacating decree, but not of the reversal of the consolidating decree; and the reasons advanced to obtain a review related only to the reversal of the vacating decree. Plainly the petitions sought a review of the latter, and of it only; and obviously the review granted was not intended to be broader than that sought in the petitions.

In turning to the particular questions presented the Circuit Court of Appeals accurately and concisely observed:

" The controversy does not touch the substantial relief asked by any of the parties; all acknowledge that the two

---

*Johnson* v. *Manhattan Ry. Co.*, 61 F. (2d) 934.

railways are in such financial straits that a court of equity must take over their assets, to prevent their dismemberment by execution, attachment and the like. The plaintiffs, and those who have intervened, [in the Johnson suit] ask for receivers, just as did the parties to the American Brake Shoe Company suit. The dispute touches merely who shall be the receivers, and who the judge to have charge of the receivership."

One question claiming attention is whether the attack made in the Johnson suit on the orders in the American Brake Shoe Company suit was direct or collateral. The suits were distinct, although directed to the same main end. Johnson purposely brought his suit as a separate and independent suit and Boehm purposely intervened in it as such. Both were invited by the orders in the other suit to appear therein and show cause, if any they had, why the temporary receivership should not be continued. Had they appeared they would have been entitled to object that the judge sitting at the time was acting without authority or in contravention of applicable court rules, and to object that the persons temporarily named as receivers were not suited to the task and ought not to be continued; and had the receivership been continued without giving effect to these objections they would have been entitled to appeal.[4] In thus seeking a correction of errors claimed to have been committed in continuing the receiverships they would have been engaged in a direct attack. But they chose to make the objections in a distinct receivership suit of their own, not on any recognized equitable ground, such as fraud, imposition or mistake, but on the ground of alleged error. In this they were engaged in a collateral attack. That their suit was brought in the

[4] 28 U.S.C., § 227; *Christian* v. *R. Hoe & Co.*, 63 F. (2d) 218; *Mitchell* v. *Lay*, 48 F. (2d) 79, 84, 85; *Kingsport Press* v. *Brief English Systems*, 54 F. (2d) 497; *Pacific Northwest Packing Co.* v. *Allen*, 109 Fed. 515; *Blake* v. *District Court*, 59 F. (2d) 78.

same court where the other suit was pending did not make the attack any the less collateral.[5] Of course, under equity rule 37, they could not intervene as parties in the other suit, save "in subordination to, and in recognition of, the propriety of the main proceeding"; but this restriction put no obstacle in their way.[5a] They were not objecting to a receivership such as was sought in the other suit, but were themselves asserting its propriety upon the same grounds and to the same general end that were set up in that suit. Their objections went only to the particular judge sitting in the hearing and to the particular receivers. In these circumstances it is plain that the attack was collateral.[6] And, this being so, there was need for heeding the familiar rule that such an attack can be successful only where and to the extent that it discloses a want of power as distinguished from error in the exertion of power that was possessed.[7]

The District Judge, as shown in his opinion, was in doubt whether the attack was direct or collateral, but conceived that the doubt could be removed and the attack made direct by ordering a consolidation of the two suits, which he did on his own motion over objections by the parties to the American Brake Shoe Company suit. The order of consolidation has since been reversed by the Circuit Court of Appeals; but, quite apart from the reversal, the consolidation did not alter the nature of the attack. Under the statute, 28 U.S.C., § 734, consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a

---

[5] *Cohen* v. *Portland Lodge*, 152 Fed. 357, 359.

[5a] *Central Republic Bank* v. *Caldwell*, 58 F. (2d) 721, 729.

[6] 1 Freeman on Judgments, 5th ed., §§ 305–308, 315; Vanfleet on Collateral Attack, §§ 2, 3.

[7] *Dowell* v. *Applegate*, 152 U.S. 327, 337–340; *Fauntleroy* v. *Lum*, 210 U.S. 230, 237; *Ex parte Roe*, 234 U.S. 70, 72; *Marin* v. *Augedahl*, 247 U.S. 142, 149, 152.

single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.[8]

Next in order are the questions respecting the Senior Circuit Judge's assignment of himself to sit in the District Court to hear matters in the American Brake Shoe Company suit. The statute, 28 U.S.C., § 22, provides that the Chief Justice, or the Circuit Justice of the circuit, or the Senior Circuit Judge thereof, may, " if the public interest requires," designate and assign " any circuit judge " of the circuit to hold a district court therein. The same authority to assign that is given to the Chief Justice and the Circuit Justice, respectively, is also given to the Senior Circuit Judge; and that authority is to assign " any circuit judge " of the particular circuit. There are no restrictive words. There can be no doubt that under this section the Chief Justice may assign the Senior Circuit Judge of the circuit, he being one of the Circuit Judges thereof; and equally there can be no doubt that the Circuit Justice may do the same. May the Senior Circuit Judge assign himself? The words of the section, taken literally, mean that he may do so; and only by implying restrictive words which are not there can the section be held to mean otherwise. But the real meaning is not reflected alone in the words of the section, for there are other considerations which point to the literal meaning as the true one.

Section 22 was first enacted as part of the Judicial Code, effective January 1, 1912, which abolished the old Circuit Courts and transferred their jurisdiction to the District Courts. When the proposed code was pending before the Congress differences of opinion arose over the proposed abolition of the Circuit Courts. There was op-

[8] *Toledo, St. L. & K. C. R. Co.* v. *Continental Trust Co.,* 95 Fed. 497, 506; *Taylor* v. *Logan Trust Co.,* 289 Fed. 51, 53; *Nolte* v. *Hudson Navigation Co.,* 11 F. (2d) 680, 682; *Mutual Life Ins. Co.* v. *Hillmon,* 145 U.S. 285, 293.

position to this on the ground chiefly that it would take Circuit Judges out of work in which they were accustomed to participate, and as to much of which there would be reason for their continued participation. These differences led to the inclusion in the proposed code of the assignment provision now embodied in § 22. Members of the committees having the bill in charge and members of the conference committee to which it ultimately was referred explained in their respective Houses that the provision was intended to establish a liberal and flexible plan under which Circuit Judges could sit in the District Courts; and that under it any Circuit Judge readily could be assigned to hold a District Court within his circuit whenever occasion therefor might arise, whether from a pressure of business in a District Court, from the presence therein of particular cases of special importance, from an absence of business in the Circuit Court of Appeals, or from any other situation, if the Senior Circuit Judge, or the Circuit Justice, or the Chief Justice, deemed the assignment to be in the public interest.[9]

Since the Judicial Code went into effect it has been the practice of most of the Senior Circuit Judges to assign themselves, as well as other Circuit Judges, to sit in District Courts within their circuits whenever they deemed that the public interest required it. The practice was initiated early in 1912 by the then Senior Circuit Judge for the Second Circuit and has been followed by each of his four successors. In the other circuits the Senior Circuit Judges, with a notable exception,[10] adopted that

[9] Congressional Record, Vol. 45, part 4, pp. 3547, 3999, 4000; Vol. 46, part 1, pp. 302, 303; Vol. 46, part 1, p. 840; Vol. 46, part 3, p. 2138; Vol. 46, part 3, pp. 4003, 4004; Vol. 46, part 4, p. 4006.

[10] Circuit Judge Walter H. Sanborn was long the Senior Circuit Judge of the Eighth Circuit and during much of that period the Justice delivering this opinion was the Circuit Justice for that

course of action. Some of the assignments were generally to hold a District Court in a named district; others were to hold a particular division of a District Court, or a term of such court at one of several places fixed by law; and still others were to hold a District Court to hear and determine a designated cause or causes.

Early in 1912 the Senior Circuit Judge of the Second Circuit assigned himself to sit in a District Court to hear matters arising in a specified receivership suit. While he was sitting in that suit an intervener challenged his authority to make the assignment or act under it. A hearing was had on the question, after which the judge in a considered opinion, published at the time,[11] upheld the assignment and denied the motion presenting the chal-

---

circuit. The files of this Circuit Justice are the basis for the following statement:

In 1912 Judge Sanborn was requested by the other Circuit Judges in that circuit and by the District Judge who was specially concerned, to take charge of an important railroad receivership suit in one of the districts within the circuit. Judge Sanborn indicated that he would be willing to undertake the service if he were assigned thereto by the Chief Justice or the Circuit Justice, but that he was quite unwilling to assign himself to the District Court for the purpose, because such an assignment would have a personal side approaching impropriety. One of the Circuit Judges and the District Judge of the particular district then applied to the Circuit Justice to make an assignment of Judge Sanborn, which was done. Judge Sanborn's indisposition to assign himself continued; and in like circumstances he was assigned by the Circuit Justice to District Courts in that circuit on twelve different occasions in the years 1912 to 1923, each assignment being limited to a particular year but otherwise general. The receiverships of the Wabash Railroad and the St. Louis & San Francisco Railroad were among the matters which came before Judge Sanborn under those assignments.

Judge Sanborn's successor as Senior Circuit Judge accepted and conformed to the general practice.

[11] *Pennsylvania Steel Co. v. New York City Ry. Co.*, 221 Fed. 440.

lenge. A review was not sought, nor was the question further agitated.

The practice of the Senior Circuit Judges here described and the decision just mentioned amounted to a practical construction of the provision in question in keeping with its literal meaning. In 1922, after that construction had prevailed and been acted on for several years, the provision was reënacted by the Congress as part of an act dealing with other assignments of judges to the District Courts.[12] The reënactment was without any change indicative of a disapproval of the prior construction by the Senior Circuit Judges. In such circumstances, as this Court often has pointed out, reënactment operates as an implied legislative approval of the prior construction—in other words, as a reënactment of the statute as before construed.[13]

It is said that § 22 gives no authority for making a selective designation, as by designating the case which the assigned judge is to hear or the part of the court in which he is to sit. To this assent cannot be given. It has no support in the words of the section, is contrary to the plain import of the legislative proceedings before noticed, and is opposed to the settled practice of the Senior Circuit Judges. Assignments to hear particular cases have been made in all the circuits. Such an assignment was involved in *United States* v. *Gill*, 292 Fed. 136, and was sustained by the Circuit Court of Appeals for the Fourth Circuit. The earliest assignments in the Second Circuit were thus limited—not only the one assigning the Senior Circuit Judge already noticed, but also those assigning other Circuit Judges. It is easily conceivable that there may be compelling reason in the public interest to make

---

[12] Act of Sept. 14, 1922, c. 306, 42 Stat. 837.

[13] *Old Colony R. Co.* v. *Commissioner*, 284 U.S. 552, 557; *McCaughn* v. *Hershey Chocolate Co.*, 283 U.S. 488, 493; *Heald* v. *District of Columbia*, 254 U.S. 20, 23.

an assignment for a particular case, or for one of several divisions of the court, or for a limited period such as thirty or sixty days. The section makes the public interest, as found by the assigning authority, the criterion. If that interest is found to require only a limited assignment, it would seem that the action taken should be limited accordingly. The succeeding section (23) requires a Circuit Judge who is assigned under § 22 to discharge all the judicial duties "for which he is so appointed, during the time for which he is so appointed." In this there is a plain implication that the assignment may be for particular duties and for a limited time.

The District Judge did not rule on the part of the attack wherein it was contended that the assignment was invalid because there was no public interest requiring it; but the Circuit Court of Appeals rejected the contention on the ground that the recital or finding in the assignment that public interest required it is conclusive in this proceeding. Plainly the Circuit Court of Appeals was right. By § 22 the decision as to a requiring public interest is left to the one having the power to assign. The duty and the responsibility are with him—as well when he is a Senior Circuit Judge as when he is the Chief Justice or a Circuit Justice. His decision that there is a requiring public interest is not open to a collateral attack such as is here presented.[14] And were it so open, no litigant could with any safety submit any matter to an assigned judge—a situation which would involve intolerable uncertainty and embarrassment to both public and private interests.

[14] *People* v. *Ballard,* 134 N.Y. 269, 293; 32 N.E. 54; *People ex rel. Saranac L. & T. Co.* v. *Supreme Court,* 220 N.Y. 487, 491; 116 N.E. 384; *State* v. *Lewis,* 107 N.C. 967, 977; 12 S.E. 457; 13 S.E. 247; *Cocke* v. *Halsey,* 16 Pet. 71, 87; *Ex parte American Steel Barrel Co.,* 230 U.S. 35, 45.

In the course of his opinion the District Judge suggested that the assault on the assignment and on the Senior Circuit Judge's authority to act under it " sounded in quo warranto," and so might possibly be regarded as being direct rather than collateral. But the suggestion was ill-grounded. Quo warranto is addressed to preventing a continued exercise of authority unlawfully asserted, not to a correction of what already has been done under it or to a vindication of private rights. It is an extraordinary proceeding, prerogative in nature, and in this instance could have been brought by the United States, and by it only, for there is no statute delegating to an individual the right to resort to it.[15] Besides, such a proceeding, to reach its objective in a situation like that here disclosed, must be brought against the person who is charged with exercising an office or authority without lawful right.[16] The Johnson suit was not against the judge acting under the assignment, but was wholly between others who were private litigants. So, granting that an attack in a quo warranto proceeding would have been direct, and not merely collateral, it must be held that the suit before the District Judge was not such a proceeding.

It follows from the views already expressed that there was no jurisdictional infirmity in the Senior Circuit Judge's orders in the American Brake Shoe Company suit, unless such an infirmity arose from his disregard of rules 1-a and 11-a of the District Court. His status when making the orders was that of a Circuit Judge specially assigned to and sitting in the District Court to hear and determine all applications and proceedings in the suit wherein the orders were made; and his powers and duties

---

[15] *Wallace* v. *Anderson,* 5 Wheat. 291; *Territory* v. *Lockwood,* 3 Wall. 236; *Newman* v. *U.S. ex rel. Frizzell,* 238 U.S. 537; *First National Bank* v. *Fellows,* 244 U.S. 416, 427–428; *First National Bank* v. *Missouri,* 263 U.S. 640, 660–661.

High on Extraordinary Legal Remedies, 3d ed., § 604.

in that connection were just what they would have been had he been so assigned by the Chief Justice or the Circuit Justice, instead of by himself. No doubt he was under a duty to recognize and respect all valid rules of the District Court which were applicable to the proceedings before him; but he was not under a duty to give effect to rules which were either invalid or inapplicable.

One of the rules disregarded, 1-a, provides that an assigned judge shall " do such work only as may be assigned to him by the senior district judge." In this there is an attempt to invest the senior judge of the district with a discretion to determine what work an assigned judge shall do, and also an attempt to exclude him from any other work. Here the Circuit Judge was sitting in the District Court under an assignment specially designating the work which he was to do. The rule says in effect that this work could not be done by him unless the senior judge of the district approved the special designation; and it means that this judge may either approve or disapprove. In short, it attempts to give him a power of veto over the designation and thus to interfere with the work specified. By statute, 28 U.S.C., § 731, the power of the District Courts to make rules is confined to such as are " not inconsistent with any law of the United States "; and it obviously would be thus limited even without the statute.[17] Not only does § 22 authorize a special assignment such as is shown here, but § 23 requires the assigned judge to discharge the duties for which he is so assigned. It is apparent, therefore, that, as applied to such an assignment, the rule operates as an interference with the discharge of those duties and is in that regard inconsistent with §§ 22 and 23 and invalid.

The other rule which was disregarded, 11-a, provides that all applications for the appointment of receivers in

---

[17] *Washington-Southern Navigation Co.* v. *Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 635, and cases cited.

equity causes shall be made to the judge holding the motion part of the court, and " to no other judge." As it is sought to be applied here, this rule is subject to objections like those just assigned for condemning the application sought to be made of rule 1-a. The judge to whom the application for receivers was presented was sitting in the District Court on the equity side. Under § 22 he was specially assigned to that court to hear and determine all proceedings in the suit in which the application was made; and § 23 laid on him a duty to conform to the assignment. The rule forbids him to hear the application notwithstanding his special assignment. Thus the rule conflicts with §§ 22 and 23 and must fall.

What has been said shows that the collateral attack cannot succeed and that the decree of the Circuit Court of Appeals must be affirmed. But in the interest of right judicial administration, and to avoid any misapprehension as to what is here decided, something more needs to be said.

The possession of power is one thing; the propriety of its exercise in particular circumstances is quite a different thing. This is true of the power of a Senior Circuit Judge to assign himself to sit in a particular case in a District Court. In its very nature this power is one which should be sparingly exercised, and then only in special exigencies and with commensurate care and discretion. The occasions are rare in which the matter cannot be referred to the Chief Justice or the Circuit Justice and committed to his consideration and judgment. A receivership is not grantable as of course, but only for reasons strongly appealing to the judge to whom the application is made. When large properties are involved a receivership usually involves widely conflicting interests and presents questions fraught with difficulty and exceptional delicacy. This was true of the receivership here in question. It involved properties, estimated to approximate $500,000,000 in value, which were held and used by a public carrier em-

ploying thousands of persons in its work and carrying hundreds of thousands of passengers each day. The carrier was in greatly embarrassed condition, had thousands of creditors whose interests were divergent, and was confronted with possible forfeiture of some of its franchises. All this shows that the situation was one in which the assignment of a judge to take charge of the receivership, if one was to be assigned, was a task which needed to be performed upon careful consideration and with the utmost impartiality. The difference of opinion between the Senior Circuit Judge and the District Judges, respecting the relative fitness of individuals and trust companies as equity receivers, was not a proper ground for taking the cause away from the District Judge before whom it ordinarily would come, and bringing it before the assigning Senior Circuit Judge.[18] Granting that the latter was most sincere in what he did, there was yet no compelling reason for assigning himself. Had he reflected he probably would not have made such an assignment; but he acted hastily and evidently with questionable wisdom. This action has embarrassed and is embarrassing the receivership. If he were now to withdraw from further participation in the receivership proceedings the embarrassment would be relieved; and the belief is ventured here that, on further reflection, he will recognize the propriety of so doing and, by withdrawing, will open the way for another judge with appropriate authority to conduct the further proceedings.                              *Decree affirmed.*

MR. JUSTICE BUTLER concurs in the result.

The CHIEF JUSTICE and MR. JUSTICE BRANDEIS did not hear the argument or participate in the decision.

[18] See *Appleton v. Smith,* 1 Fed. Cas. No. 498, p. 1075; *Cole Silver Mining Co. v. Virginia & G. H. Water Co.,* 6 Fed. Cas. No. 2990, pp. 72, 74; *Hadden v. Natchaug Silk Co.,* 84 Fed. 80; *Harkin v. Brundage,* 276 U.S. 36, 55.