Shannon M. PETERS, Plaintiff,

v.

**WOODBURY COUNTY, IOWA,**
et al., Defendants.

Nicole A. Clay, Plaintiff,

v.

**Woodbury County, Iowa,**
et al., Defendants.

Nos. C12–4070–MWB, C12–4042–MWB.

United States District Court,
N.D. Iowa,
Western Division.

June 20, 2013.

David A. O'Brien, Willey, O'Brien, LC, Cedar Rapids, IA, for Plaintiff.

Timothy C. Boller, Timothy C. Boller, Gallagher, Langlas & Gallagher, PC, Waterloo, IA, John C. Gray, Heidman Law Firm, LLP, Sioux City, IA, for Defendants.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

The plaintiffs in these separate civil cases have filed motions to consolidate them for discovery and trial. *See* Doc. No. 32 in Case No. 12–4070 (hereafter, the "Peters case"); Doc. No. 41 in Case No. 12–4042 (hereafter, the "Clay case"). The defendants in both cases have filed resistances. *See* Doc. Nos. 33 and 36 in the Peters case; Doc. Nos. 42 and 43 in the Clay case. The issues have been thoroughly briefed by the parties and I therefore find that oral argument is not necessary. *See* Local Rule 7(c). The motions are fully submitted.

### BACKGROUND AND PROCEDURAL HISTORY

The Clay case was filed April 27, 2012. The named defendants include Woodbury County ("County"), the City of Sioux City ("City") and the following individuals: Glenn J. Parrett (the County's former Sheriff), Amy Strim, Brigid Delaney, Jorma Schwedler, Dustin DeGroot, Jeremy Stroman and Brad Echter (Stroman was recently dismissed by stipulation). In her third Amended Complaint, plaintiff Nicole A. Clay states that on August 12, 2011, she was arrested for public intoxication, a simple misdemeanor, by Echter, a police officer for the City. She alleges that after she was taken to the County jail, the defendant correctional officers engaged in an unreasonable strip search in violation of the Fourth Amendment and violated her First Amendment rights by engaging in this activity in retaliation for her verbal objections to their conduct. She also alleges that Echter and the correctional officers conducted an unreasonable search of her purse in violation of the Fourth Amendment. In addition, Clay alleges that the County and Parrett established a policy, regulation, official decision, custom or usage with reckless or deliberate indifference to her rights. She demands a jury trial.[1]

The Peters case was filed July 17, 2012. The named defendants include the County

---

1. While Clay originally sought to bring her claims on behalf of a class, she has dismissed her class-related claims. *See* Doc. No. 39 in the Clay case.

and Parrett, along with the following individuals: Michelle Risdal, Lee Blanchard, Jonathon Hatfield, Carlos Lucero, Andrew Vogt and Zachary Lux (Lux and Vogt were recently dismissed by stipulation). In her complaint, as amended, plaintiff Shannon M. Peters states that she was arrested on May 27, 2012, for violation of a no contact order and was taken to the County jail. She alleges that the defendant correctional officers then conducted an unreasonable strip search in violation of the Fourth Amendment. She also alleges that the officers unlawfully retaliated against her exercise of First Amendment rights. Finally, she alleges that the County and Parrett established a policy, regulation, official decision, custom or usage with reckless or deliberate indifference to her rights.[2] She demands a jury trial.

Trial is scheduled to begin on December 16, 2013, in the Peters case and on February 3, 2014, in the Clay case. The cases are at very similar stages of the pretrial process.

### ANALYSIS

■ The Federal Rules of Civil Procedure provide: "If actions before the court involve a common question of law or fact, the court may ... join for hearing or trial any or all matters at issue in the actions ..." Fed. R.Civ.P. 42(a). A motion to consolidate is entrusted to the sound discretion of the court, but that discretion is not unbounded. *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir.1994); *United States E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir.1990), *cert. denied*, 502 U.S. 956, 11 S.Ct. 414, 116 L.Ed.2d 435 (1991). Consolidation is not permitted unless the separate actions involve a common question of law or fact. *Saettele*, 21 F.3d at 235 (citing Fed.R.Civ.P. 42(a)); *see also Seguro de Servicio de Salud v. McAuto Sys. Group*, 878 F.2d 5, 8 (1st Cir.1989) ("The threshold issue is whether the two proceedings involve a common party and common issues of fact or law."); *Frazier v. Garrison I. S.D.*, 980 F.2d 1514, 1531 (5th Cir.1993) ("[A] trial court may consolidate multiple actions if the actions involve common questions of law or fact."); *Doug Brady,*

*Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 176 (D.N.J.2008).

■ Consolidation is a "matter of convenience and economy in administration," *EEOC v. Von Maur, Inc.*, 237 F.R.D. 195, 197 (S.D.Iowa 2006) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496, 53 S.Ct. 721, 77 L.Ed. 1331 (1933)), and its purpose is to avoid unnecessary cost or delay. *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir.1998). As such, "[t]he Rule should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir.1999) (internal citations and quotations omitted). Consolidation is inappropriate if it would lead "to inefficiency, inconvenience, or unfair prejudice to a party." *HBE Corp.*, 135 F.3d at 551.

■ "The party seeking consolidation bears the burden of showing that it would promote judicial convenience and economy." *Powell v. Natl. Football League*, 764 F.Supp. 1351, 1359 (D.Minn.1991); *see also Fleishman v. Prudential–Bache Sec., Inc.*, 103 F.R.D. 623, 624–25 (E.D.Wis.1984). In considering a motion to consolidate multiple actions, the court must determine:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir.1993) (quoting *Hendrix v. Raybestos–Manhattan Inc.*, 776 F.2d 1492, 1495 (11th Cir.1985)); *see also Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 405 (D.Minn.1998) (citing *Cantrell* ).

---

**2.** Peters recently dismissed Count IV of the Amended Complaint, which alleged that the officers used excessive force and conducted an unreasonable search of her cell phone and purse in violation of the Fourth Amendment. *See* Doc. No. 37 in the Peters case.

### 1. Common questions of law or fact

■ The Clay case and the Peters case share two common parties (the County and Parrett). They also share some similar legal issues. Each plaintiff contends she was subjected to searches and seizures during and after the booking process that violated her Fourth Amendment rights and that constituted wrongful retaliation for the exercise of her constitutional rights of free speech. Each plaintiff contends that the County and Parrett maintained a policy that, when applied, violated her rights. As such, the legal standards and jury instructions applicable in the Peters case will likely be similar to those in the Clay case. I find that the legal issues presented by the two cases are common enough to satisfy the threshold requirement for consolidation pursuant to Rule 42(a).

### 2. Other factors

#### a. Risk of prejudice

■ Defendants assert that the factual circumstances giving rise to these two cases are so distinct and unrelated that prejudice would naturally result if they are consolidated for trial. This is a valid point. The relevant events occurred on two separate dates, more than nine months apart. Based on the allegations in each plaintiff's complaint, as amended, it is clear that there is no overlap between the group of defendants who interacted with Clay and the group of defendants who interacted with Peters. Moreover, while the factual circumstances presented by the two cases are generally similar, there are virtually no *common* issues of fact. Some fact witnesses will testify about what happened when Clay was at the jail. Others will testify about what happened months later, when Peters was at the jail. There will be little or no overlap among the fact witnesses. Most witnesses will either be a "Clay case" witness or a "Peters case" witness.

This is likely to cause confusion because there are many differences between the two sets of events. In her interrogatory answers, Clay states that Echter ignored her request to loosen her handcuffs and, instead, "tightened them as tight as they would go." She then claims that he started going through her phone and that she yelled at him to stop. After arriving at the jail and being placed in a cell, she contends two female officers told her to take off her shirt and bra while a male officer was in plain sight. When Clay refused, she contends that the female officers picked her up, slammed her head into the wall and then placed her face down on the bunk. She contends that male officers then entered the cell and "started participating in the assault." She states that she was held down and she believed they were trying to "knock [her] out so that the male jailers could have their way with [her]." Once her shirt and bra were removed, a female jailer allegedly threw a jail suit at her and told her to put it on.

Peters, in her interrogatory answers, states that when she arrived at the jail she was taken to a cell by a female officer and two male officers. The female officer asked if she wanted to hurt herself, and she answered "no." The female officer then told her to take off her clothes. Peters alleges that when she hesitated, and instead asked questions about the presence of male officers, the female officer grabbed her arm and the two male officers, along with others, then rushed into the cell and began assaulting her. She states that her arms were twisted and pulled while a male officer jammed his finger under her jaw bone and screamed profanities, threatening to hit her if she did not turn her head. She contends that she screamed in pain and begged for help, "but the beating only got worse." Ultimately, she says, her clothes were removed by force and the mattress was taken from her cell. She contends that she was left naked in the cell for several hours with nothing but a paper cover smaller than a bath towel. During this time, she alleges that male guards checked on her while knowing she was naked.

Defendants contend that the evidence will show the events and circumstances of each situation are in dispute and, more pertinent to the pending motions, significantly different. For example, defendants contend that Clay ultimately complied with the order to remove her clothing while Peters did not. Further, according to the incident reports, Peters refused to answer screening questions concerning an inmate's suicide risk while Clay, by contrast, provided answers. This

alleged distinction may have caused differences in how the two situations were handled. Moreover, according to the incident reports, Peters' alleged belligerence and resistance exceeded Clay's.

Finally, of course, each plaintiff's damages are independent. While they allegedly underwent similar experiences, each plaintiff will have to present proof of her own unique damages at trial. The evidence presented by one plaintiff will be irrelevant to the group of individual defendants who are named only in the other plaintiff's case.

Each situation unfolded separately, months apart, and involved different participants. A combined trial would literally involve trying two separate cases to the same jury at the same time. I find that the jurors are likely to confuse the two cases and the witnesses if these cases are combined. The jury would be required to assimilate and analyze testimony from many witnesses about two similar, but yet quite different, factual circumstances. The potential confusion creates a serious risk of prejudice to the defendants. I find that this factor weighs strongly against consolidation.[3]

### b. Burden on the parties, witnesses, and resources

■ Plaintiffs contend that consolidation will promote efficiency and convenience in the administration of the two cases, as much of the discovery conducted in one case is relevant to the other and there is substantial overlap in the evidence that would be offered at two separate trials. Defendants disagree, partially due to the distinctions already addressed above. Defendants also point out that a combined trial would require a large group of the County's correctional officers (those named in the Clay case plus those named in the Peters case) to attend a lengthy trial together, with each officer spending much of his or her time listening to evidence that is not relevant to the claims against that officer.

I agree that requiring each individual defendant to sit through a combined trial, and thus effectively attend both trials, would pose a burden. Moreover, I find that a combined trial would create complexities resulting in the imposition of burdens on the court and the parties. For each exhibit offered, and each witness examined, issues would arise as to whether the evidence applies to the Clay case, the Peters case or both. It is quite foreseeable that some evidence will be admissible with regard to only one case, yet would necessarily be heard by the same jurors deciding the other case.[4] I expect that a great deal of time during a combined trial would be spent discussing and attempting to resolve issues of this nature.

The jury instructions and the verdict form would be complex in a combined trial. Even with recent voluntary dismissals, there are eight defendants in the Clay case and six in the Peters case. Only two overlap. The jury in a combined trial would have to determine the liability of those two defendants in both cases, plus six other defendants in the Clay case and four other defendants in the Peters case. Meanwhile, in both cases certain claims are brought only against some of the named defendants.

I find that attempting to merge these two separate lawsuits into a single trial would impose unnecessary burdens on the parties, the court and the jurors. Therefore, I conclude that this factor, too, weighs against consolidation.

---

**3.** In making this finding, I have considered the evidence and arguments submitted by some of the defendants concerning a recent press conference conducted by plaintiffs' counsel. The press conference took place on May 9, 2013, apparently a few days after the defendants refused to agree that the cases should be consolidated. The defendants argue that the statements made during the press conference, and the materials distributed to the media, substantially (and perhaps intentionally) blurred the factual distinctions between the two cases. This, they contend, provides a preview of what would happen during a combined trial. I would have found that the "prejudice" factor weighs against consolidation even without the press conference and its resulting media coverage. However, I agree that the press conference did not exactly advance plaintiffs' argument that consolidation would not cause unfair prejudice to the defendants.

**4.** For example, because most parties in one case are not parties in the other, statements that are admissible under Rule of Evidence 801(d)(2) (statements by an opposing party) are likely to be admissible in one case only.

### c. *Length of Trial*

Certain evidence, particularly evidence concerning jail policy, administration and procedure, would clearly overlap. In a combined trial, such evidence would need to be presented just once, thus resulting in some efficiency. The plaintiffs have not provided an estimate as to the number of trial days that may be saved by combining the trials. The defendants contend that the number may be zero. *See, e.g.,* Doc. No. 43–1 in the Clay case at 9–10.

Because of the factual and evidentiary distinctions I have discussed above, I do not believe the amount of saved time would be significant. As such, this factor is either neutral or, at most, weighs slightly in favor of consolidation.

### d. *Risk of Inconsistent Adjudications*

Because the relevant, operative events occurred on different days and involved different participants and circumstances, jurors will have to analyze the events independently even if the cases are consolidated for a single trial. Indeed, it is entirely possible that one plaintiff may prevail and the other may not, regardless of whether the cases are tried together or separately. There would be nothing inherently inconsistent in such an outcome. As such, this factor does not weigh in favor of consolidation.

### *CONCLUSION*

After considering the relevant factors, I find that the risks of unfair prejudice and increased burdens on the parties and the court substantially outweigh any benefits that might result from consolidation. The plaintiffs have not met their burden of proving that consolidation is appropriate. As such, the joint motion to consolidate, filed by each plaintiff in her respective case, is **denied.**

**IT IS SO ORDERED.**