## Bragdon, Admr., *v.* Pittsburgh Railways Company, Appellant.

308

Argued October 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Con F. McGregor,* with him *Bechman, Dunn & Mc-Gregor,* for appellant.

*Ralph S. Davis, Jr.,* with him *Evans, Ivory & Evans,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 17, 1953:

On the night of August 14, 1947, a Carrick street car of the defendant company, speeding down Browns-ville Road, leaped its rails, ploughed across the track

and struck an automobile coming in the opposite direction, killing its driver, Robert M. Bragdon, and seriously injuring the guest passenger, Vera McAlister Skelton. The administrator of the estate of the deceased Bragdon brought both death and survival actions against the defendant company; and the guest passenger sued the company in trespass for her injuries. The lawsuits were consolidated for trial; the jury returned verdicts for the plaintiffs; the defendant company moved for judgments n.o.v. and for a new trial, the motions were denied and these appeals followed.

The defendant contends that the deceased driver was the author of his own misfortune in that he recklessly drove his automobile into and against the moving street car. It does not deny that the street car left the rails but asserts that the derailment resulted from the impact of the automobile against the street car.

The primary question which the jury had to decide was: Did the automobile strike the car and derail it or did the street car jump the track and run down the automobile?

It is, of course, axiomatic, in the review of these cases, that the testimony must be read in the light most advantageous to the party whose version of the disputed issue has been approved by the jury. Accepting that version, then, our task is to determine if the record sustains the verdict.

Harry L. Heckman, a passenger on the street car, testified that the car, speeding downgrade on Brownsville Road, travelled with such velocity that it swayed and rocked and hit a curve with a momentum that threw him from his seat across the aisle; that the motorman never touched the brake throughout the careening journey and that, entering the curve, the car "veered to the

right, came back upright," and then leaped the rails to the destruction of the automobile and the death and injury of its occupants. In describing the noise of the street car's grinding the pavement, the witness employed the onomatopoeia of "r-r-rip bang" . . . "a rumble and a crash."

Mrs. Vera McAlister Skelton, the guest passenger in the automobile, testified that the automobile in which she was riding was moving on its side of the road, the right wheels straddling the outer rail. Proceeding at 20 miles per hour (the automobile had travelled only a half block) she saw the street car a quarter of a block away. Suddenly, as she artlessly but graphically described the accident, there was a "flash of light and it swirled toward us and then a crash and that's all I remember."

The operator of the street car, Roy F. Hayhurst, testified that the automobile was speeding at 70 miles per hour "more in the center of the road," that it crossed over and hit the left front of the street car. Four passengers sitting in the rear of the car testified that they did not see what happened prior to the derailment and collision.

The issue of fact, therefore, so far as oral testimony is concerned, was thus left to a battle of credibility with Mrs. Vera McAlister Skelton and Harry L. Heckman on one side and Roy F. Hayhurst on the other.

But over and above this testimony, however, there were the telltale markings in the bed of the track. It is not only in Omar Khayyam's poem that the moving finger writes an ineradicable tale. The wheels of every moving vehicle tells the account of its travels on the road, and here the street car chiseled its story in stone for the rest of the world to read. The photographs in evidence show the trail of the sharp flanges of the front truck car wheels as they separated from

the rails and swung to the left tangentially across the track to the point where the street car and the automobile came together. It was admitted that the actual collision occurred *south* of a sewer drop in the street. The photographs show the beginning of the gutted lines *north* of the sewer drop and continuing across the drain. Since the car was travelling southwardly, the sheer mathematics, physics and scarred stone thus prove beyond the peradventure of a doubt that the accident was the result of the car's violent departure from its iron path.

Defendant's counsel admitted at the oral argument that, normally, when a blow comes from the left, the assaulted object will swing, or be displaced, to the right. However he sought to displace this logical observation by stating that when the automobile struck the car on the left, the car rose from the left rail and pivoted on the right wheels, the flanges holding the car in place, but when the car settled back into its road bed, the flanges did not fit into their grooves and thus the car became derailed. This is an attractive theory, ingenious and plausible. However, it overlooks the etchings in the stone surface which depict with lithographic certitude the fact that the car was *already* off its rails before it collided with the automobile.

Defendant's counsel's other theory, namely, that the indentations in the stone were caused when the wrecking crew rerailed the car, is also shattered by the incontestable fact that the rugged engraving ends at the point of the collision. The witness called by the defendant to give support to this theory failed to supply any evidentiary foundation for it.

Defendant's counsel complains that the court allowed too much emphasis to be placed on the presumption that the decedent used due care. In the case of

*Morin v. Kreidt,* 310 Pa. 90, 97, this Court said: "When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was exercising due care." The trial court acknowledged this presumption and then protected the defendant's rights in over-measure by explaining: "Now, that presumption may be overcome by the testimony and that is for you to determine whether or not Robert M. Bragdon was using due care or whether he was guilty of negligence, or guilty of contributory negligence. If he was guilty of negligence, even to the slightest amount, contributory negligence, then his estate could not recover and he could not recover."

We see no merit in the contention that the court failed to properly charge on proximate cause or on the respective duties of the operators of the vehicles. Both these propositions were adequately covered.

Nor is there any error in the fact that the court in effect absolved Mrs. Skelton from contributory negligence. There was not the slightest evanescent scintilla of evidence that she had any control over the car. The testimony of the motorman that the automobile was being driven at 70 miles per hour (it had as above stated moved only one-half block) was, in the light of the physical facts, entirely incredible. Nonetheless the court mentioned it in his charge and the jury had it for consideration.

In his brief, defendant's counsel quotes from *Apfelbaum v. Markley,* 134 Pa. 392, to the effect that if a guest passenger, aware of a manifest danger, "sits by without protest and permits himself to be driven on to his injury, this negligence is such that will bar recovery." But, as already mentioned, there was no

evidence of a manifest danger which required Mrs. Skelton to voice protest. Her testimony, accepted by the jury as correct, was that the automobile was travelling at 20 miles per hour.

The defendant complains that the verdicts were excessive. The verdict in favor of Harry N. Bragdon, Jr., Administrator, on behalf of the estate, in the sum of $15,000, is justified by the evidence in the case and will remain unaltered. The verdict for Bragdon as administrator on behalf of the next of kin, in the sum of $10,000, is reduced to $5,000 because of the absence of evidence as to the financial status of the parents or the cost of providing room and board for the deceased.

The judgment of $15,000 is therefore affirmed as entered in the court below and the judgment of $10,000 is affirmed as modified above.

The judgment in favor of Vera McAlister Skelton in the sum of $4,000 is affirmed.