636 F.2d 46
 John ONUFER, Administrator of the Estate of John E. Onufer,
Deceased, on behalf of the next of kin of John E. Onufer,
Deceased and John Onufer, Administrator of the Estate of
John E. Onufer, Deceased on behalf of the Estate of John E.
Onufer, Deceased
v.
SEVEN SPRINGS FARM, INC., also known as Seven Springs
Mountain Resort, a Corporation
John Onufer, Administrator of the Estate of John E. Onufer,
deceased, on behalf of the next of kin of and on
behalf of the Estate of John E. Onufer,
deceased, Appellant.
 No. 79-2642.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 5, 1980.
Decided Dec. 10, 1980.
 
 1
 Charles E. Evans, Sikov & Love, Pittsburgh, Pa., for appellant.
 
 
 2
 C. S. Fossee, Munovich, Reale & Fossee, Pittsburgh, Pa., for appellee.
 
 
 3
 Before ALDISERT and SLOVITER, Circuit Judges, and HANNUM, District Judge.*
 
 OPINION OF THE COURT
 
 4
 HANNUM, District Judge.
 
 
 5
 This is an appeal from a ruling by the district court in which a verdict was directed in favor of the appellee, Seven Springs Farm, Inc., (hereinafter "Seven Springs"). The suit which was dismissed as a consequence of this ruling was instituted as a wrongful death and survival action in diversity under Pennsylvania law and arose from the passive drowning of the decedent, John E. Onufer. The cause of action accrued when the decedent, a forty-six (46) year old male and business invitee of Seven Springs, entered the appellee's indoor pool and began swimming laps. Shortly thereafter several persons observed the decedent lying motionless on the bottom of the pool. Resuscitative efforts proved fruitless and the decedent subsequently expired. A negligence theory of liability was asserted for reasons that allegedly only one (1) lifeguard was attending the pool area, that he was not utilizing the lifeguard perch which afforded the best vantage point for observation, that his attention was diverted by the additional responsibility of monitoring pool admissions and that resuscitative efforts were belatedly begun thus rendering them useless.[1] The verdict was directed at the conclusion of testimony. The sole issue thus presented is whether the district court erred by directing a verdict in favor of the appellee when the evidence presented at trial is viewed in a light most favorable to the appellant. Fireman's Fund Insurance Co. v. Videfreeze Corp., 540 F.2d 1171 (3d Cir. 1976). For the reasons that follow, we conclude that the district court's ruling constituted reversible error.
 
 
 6
 In order for the appellant to have ultimately secured the relief requested at the trial level, he would have had to establish to the jury by a preponderance of the evidence that Seven Springs owed a duty of care to the decedent, that there had been a breach of that duty through negligent acts or omissions and that the negligence was the proximate cause of the decedent's demise. See, e. g., Mahler v. United States, 196 F.Supp. 362 (W.D.Pa.1961), aff'd, 306 F.2d 713 (3d Cir. 1962). Before the case was submitted to the jury, however, the district court undertook a preliminary scrutinization of the evidence upon the filing of the appellee's motion for a directed verdict pursuant to F.R.Civ.P. 50(a). Such a scrutinization was to be guided not by analyzing "whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978). "(I)f the evidence is of such a character that reasonable men, in the impartial exercise of their judgment may reach different conclusions, the case should be submitted to the jury." Silverii v. Kramer, 314 F.2d 407, 409 (3d Cir. 1963). See also Patzig v. O'Neil, supra.
 
 
 7
 The district court in its preliminary scrutinization apparently concluded that the appellant had failed to present evidence establishing a causal connection between the alleged negligence of the lifeguard and the death of the decedent. A colloquy between the district court and counsel occurred at the close of testimony in a portion of which it was stated:
 
 
 8
 So even assuming that the lifeguards were negligent, and assuming that the lifeguards should have been looking, or sitting in the chair, there is no evidence at all to show in my view that the man would have been saved under these circumstances.
 
 
 9
 There is nothing to prove that even assuming he had been pulled out within a reasonable time that he would have been saved.
 
 
 10
 Because of this, we can't allow the lawyers to speculate, surmise, and conjecture. You have to have evidence to go on.
 
 
 11
 Under the circumstances, we have entered a verdict in favor of the defendant because of that failure of proof, as I view it, on the part of the plaintiff.
 
 
 12
 Notes of Testimony, p. 610. (Emphasis added). While assuming the existence of negligence, the district court applied a type of reverse "but-for" test-even had the lifeguard's attention been focused solely upon the swimming pool, there was no evidence presented to suggest that the decedent would have been observed in his passive struggle and, indeed, would have survived. In this regard, the district court relied upon certain testimony, to the exclusion of other evidence, that the decedent had in the past suffered from epileptic and psychomotor seizures which may have caused the drowning and that the passive nature of the drowning militated against observation by the lifeguard.[2]
 
 
 13
 Our review of the district court's ruling will be conducted by analyzing the evidence adduced at trial and by applying it to the elements of proof necessarily made out to establish a negligence claim. Of course, the evidence will be viewed in a light most favorable to the appellant in accordance with the applicable standard. Fireman's Fund Insurance Co. v. Videfreeze Corp., supra.
 
 
 14
 There is sufficient evidence of record to suggest that the decedent enjoyed a status of a business invitee while on appellee's premises. Accordingly, although the appellee's obligation did not arise to the level of an insurer, it did owe a duty to exercise reasonable care under all the circumstances. Zeman v. Borough of Cannonsburg, 423 Pa. 450, 223 A.2d 728 (1966); DeSimone v. City of Philadelphia, 380 Pa. 137, 110 A.2d 431 (1955). What constitutes the exercise of reasonable care is a matter determined by the facts of each particular case.
 
 
 15
 In the present case, as earlier noted, the appellant alleged that the appellee was vicariously negligent through the acts and omissions of the lifeguard. Particularly, the appellant proffered as constituting negligence the lifeguard's failure to utilize the lifeguard perch and his diversion from attending solely to lifeguard duties. These alleged instances of negligence thus caused resuscitative efforts to be rendered belatedly and, finally, fruitlessly. We find that the evidence presented in support of these claims of negligent conduct suggest the satisfactory provision of a prima facie case. There is unequivocal evidence that James Ulichney was the sole lifeguard on duty and that during pertinent times his attention was diverted from the swimming pool while he assumed the additional responsibility of monitoring admissions to the pool area.[3] Whether this diversion from observing the activities confined to the swimming pool constituted a negligent act or omission is a matter within the province of the jury. Cf. Zeman v. Borough of Cannonsburg, supra (question for jury whether lifeguard's tolerance of rowdyism constituted negligence).
 
 
 16
 The inquiry most significant to this appeal and the area in which the district court apparently based its ruling pertains to the issue of causation. In this regard, we must evaluate whether the evidence adduced at trial favoring the appellant was sufficient to warrant submitting the case to the jury. Specifically, a conclusion must be reached whether the jury could have properly found for the appellant when the evidence was viewed in a light most favorable to him. Patzig v. O'Neil, supra.
 
 
 17
 During oral argument at the close of testimony, the district court emphasized two areas in which the appellant's evidence failed to establish a causal connection between the lifeguard's diversion from the swimming pool and the decedent's passive drowning. The district court perceived a complete lack of evidence concerning whether the decedent would have been observed in his passive struggle had the lifeguard not been diverted by his other duties and whether even if the decedent had been observed whether he would have survived. The case was thus withdrawn from the jury in order to avoid, in the district court's view, a verdict based on speculation and conjecture.[4]
 
 
 18
 The appellant introduced evidence during the course of the trial with respect to the lifeguard's additional responsibility of monitoring admissions to the pool area and his failure to utilize the elevated perch situated at poolside. In essence, the evidence was offered to establish that the lifeguard's attention was completely diverted and distracted from the swimming pool. The appellee, in his argument and brief presented before this court, has asserted that even if the lifeguard had utilized the perch and focused his attention solely upon the swimming pool that movement of the water created the impression that the decedent was still moving and thus that no conclusion of negligence applicable to the lifeguard could have been reasonably maintained.[5] We conclude that there was sufficient evidence, and reasonable inference derived therefrom, for a jury to properly conclude that the lifeguard was negligent in his observation of the swimming pool and that the resultant failure to notice the decedent may have been a substantial factor causing the latter's demise. Implicit in this conclusion is the recognition that an entirely reasonable inference may be drawn that an attentive lifeguard presiding over a relatively small swimming pool area should have noticed the decedent's passive struggle. See Denneny v. Siegel, 407 F.2d 433 (3d Cir. 1969).[6]
 
 
 19
 Likewise, we conclude that there was sufficient evidence of record by which the jury could have properly found that the decedent may have survived but for the lifeguard's negligent observation of the swimming pool and belated resuscitative efforts. The district court balked at submitting the case to the jury because it perceived a lack of evidence concerning when the decedent became disabled in the water and when he subsequently expired. Yet the record reveals the testimony of Dr. Cyril H. Wecht, a forensic pathologist who testified on behalf of the appellant, and Dr. Jerome H. Aarons, who testified on behalf of the appellee, which provide sufficient evidence of the fact that the decedent may have died from the drowning and not another cause[7] and that his life may have been salvaged had he been earlier noticed in his struggle and afforded resuscitative relief. Both physicians suggested that the decedent's life could have possibly been saved had he been withdrawn from the pool in a timely manner and had resuscitative efforts been immediately begun.[8]
 
 
 20
 The content and focus of our ruling that a verdict was improperly directed in this case neither emanates from an evaluation of the credibility of witnesses nor the merits of the evidence adduced at trial but rather is merely a finding that the resolution of the issues presented was a matter within the comprehension and province of the jury. Whether the decedent would have been noticed in his passive struggle and whether he would have been salvaged upon the timely implementation of resuscitative efforts are questions that may be decided at trial in favor of either party and still be supported by credible evidence. See generally Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978).[9] Because the evidence must be viewed in a light most favorable to the appellant, our sole recourse is to reverse the district court's order directing a verdict in favor of the appellee and remand the case for new trial on the merits.
 
 
 21
 The judgment of the district court will be reversed and the case remanded for proceedings in accordance with the foregoing.
 
 
 
 *
 Honorable John B. Hannum, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The parties have formally stipulated that the lifeguard, James Ulichney, was acting within the scope and course of his employment with Seven Springs at all times material to this incident
 
 
 [2]
 Counsel for Seven Springs argued before the district court that there existed "evidence that ... (the decedent) may never have been able to be resuscitated due to the manner in which he drowned", Notes of Testimony, p. 583, and that the decedent "could have been dead before anybody realized he was in trouble...." Notes of Testimony, p. 504. (Emphasis added). A contributory negligence argument was also presented on the basis that the decedent had a history of seizures and failed to notify the lifeguard. See note 7 infra
 
 
 [3]
 It is noteworthy that regulations promulgated pursuant to the Public Bathing Law, Pa.Stat.Ann. tit. 35, § 673(1) (Purdon) provide as follows:
 § 193.41. Reduction of hazards.
 Construction, equipment, operating and maintenance at all public bathing places shall be such as to reduce to a practical minimum the danger of injury to persons from drowning, falls, collisions, fires, nuisances, or hazard of any kind.
 § 193.42. Lifeguards.
 (a) Number. One or more competent lifeguards in adequate number shall be on duty at the waterside at all times the public bathing place is open to use by bathers, and shall not be assigned other tasks which will divert their attention from the safety of the bather.
 (b) Qualifications. Lifeguards shall be capable swimmers, skilled in lifesaving methods of artificial resuscitation as evidenced by their possession of a currently valid certificate or other proof of proficiency from a recognized agency offering instructions in these fields.
 Pa.Code. tit. 25, §§ 193.41 and 193.42. (Emphasis added). Whether the lifeguard's acts or omissions constituted negligence per se under Pennsylvania Law is not an issue presently before us.
 
 
 [4]
 Notes of Testimony, p. 610
 
 
 [5]
 The appellee underscores the testimony of the lifeguard, James Ulichney, wherein it was stated that according to the Red Cross most drowning cases are brought to the attention of the lifeguard by companion or other swimmers. Although this testimony, of course, may be considered, it in no way dictates a conclusion negating negligent observation. Indeed, what Red Cross statistics reveal as occurring in most cases is most probably accurate but this case may not involve facts existent in most cases. Moreover, the statistic offered doesn't specify whether lifeguards in these cases were found or considered negligent
 
 
 [6]
 There is evidence that patrons of the appellee's pool had observed the decedent swimming laps and thus an inference may be drawn that an observant lifeguard would have likewise noticed the decedent. See Notes of Testimony, pp. 55-59, 98-99, 116-24 and 225-27
 This inference is deemed permissible for reasons that a non-moving party in a motion for a directed verdict enjoys favor when an analysis is made whether the fact to be inferred is more probable than the non-existence of the fact. See 9 Wright & Miller, Federal Practice and Procedure: Civil, § 2528. "Even if the facts are undisputed, the case may go to the jury if conflicting inferences may be drawn from the facts." 9 Wright & Miller, Federal Practice and Procedure, Civil, supra at p. 564. See also Smith v. Hobart Manufacturing Co., 185 F.Supp. 751 (E.D.Pa.1960).
 
 
 [7]
 The appellee had introduced evidence concerning the decedent's history of epileptic and psychomotor seizures in an effort to establish a theory for a cause of death different from that of drowning. Although such a conclusion may be permissibly drawn from the facts adduced at trial and by a jury, such a conclusion is unwarranted at the directed verdict stage when evidence exists by way of testimony that the cause of death was accidental drowning. See Notes of Testimony, pp. 326-28
 The appellee has sought to advance assumption of risk and contributory negligence arguments on the strength of its evidence of the aforementioned seizures. Of course, the burden in this regard falls squarely upon the appellee. See generally Bragdon v. Pittsburgh Railways Company, 375 Pa. 307, 100 A.2d 378 (1953). We are unwilling to conclude that failure to notify the lifeguard of a removed history of epileptic and psychomotor seizures constituted contributory negligence or evidenced an assumption of risk as a matter of law.
 
 
 [8]
 Notes of Testimony, pp. 335-39 and 543
 
 
 [9]
 The Pennsylvania Supreme Court in Hamil recognized the possible inapplicability of the directed verdict vehicle for disposing of cases involving facts and claims similar to those contained in the present case:
 The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if defendant had acted otherwise. If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case. Thus when a child is drowned in a swimming pool, no one can say with absolute certainty that a lifeguard would have saved him; but the common experience of the community permits the conclusion that the guard would more probably than not have done so, and hence that the absence of the guard has played a substantial part in bringing about the death of the child. Such questions are normally for the jury and the court may seldom rule on them as matters of law.
 Hamil v. Bashline, supra at 269 n.7, 396 A.2d at 1287 n.7. (Emphasis added).