**In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.**

**This Document Relates To:**

**Johnson (CV–87–0724 (S.D.N.Y.)**

**Higgins (CV–87–0537 (S.D.N.Y.)**

**Nos. CV–87–0724, CV–87–0537.**

United States District Court,
E.D. New York,
S.D. New York.

Feb. 3, 1989.

The facts are not disputed except as noted. The *Higgins* and *Johnson* cases were consolidated for trial before the undersigned and a jury. All parties assumed that Celotex Corp., Raymark Industries, Inc., and Owens–Illinois, Inc. were named as defendants in both cases. After trial, the jury rendered a verdict for plaintiffs in both cases, holding all three defendants liable as follows:

Higgins:

| | | |
|---|---|---|
| Compensatory damages: | | $1,000,000 |
| Percentage of responsibility: | | |
| Mr. Higgins | 10% | |

Higgins:

| | | |
|---|---|---|
| Celotex | 10% | |
| Raymark | 10% | |
| Owens–Illinois | 10% | |
| Ten settling co-defendants | 6% each | |
| Punitive damages: | | |
| Celotex | | $1,000,000 |
| Raymark | | $1,000,000 |
| Owens–Illinois | | $1,000,000 |

Johnson:

| | | |
|---|---|---|
| Compensatory damages: | | $ 350,000 |
| Percentage of responsibility: | | |
| Celotex | 12.5% | |
| Raymark | 12.5% | |
| Owens–Illinois | 5.0% | |
| Seven settling co-defendants | 10.0% each | |
| Punitive damages: | | |
| Celotex | | $1,000,000 |
| Raymark | | $1,000,000 |
| Owens–Illinois | | $ 800,000 |

After the verdict but before entry of judgment, it became clear that Celotex had never been named or served as a defendant in *Higgins,* apparently because both Higgins and Celotex were thought to be Florida citizens.

Celotex is incorporated in Delaware, but a corporation is also a citizen of the state of its principal place of business. 28 U.S.C. § 1332(c). Defendants assert that Celotex's principal place of business is in Florida, based on a terse affidavit from one D.S. Gibson, Manager of Safety and Property Conservation for Celotex. Plaintiff has not applied for leave to file an amended complaint alleging diversity and has failed to present any evidence concerning Celotex's principal place of business at the time these actions were commenced. Since the burden of pleading and proof is on plaintiff to establish diversity, I shall proceed on the premise that diversity is lacking between

## MEMORANDUM AND ORDER

SIFTON, District Judge.

These two asbestos-related personal injury cases are before the court on seven motions made after the jury's verdicts. Four of the motions arise because of the extraordinary circumstance that one allegedly non-diverse party proceeded through trial and verdict although never named in the complaint or served with process.

Celotex and plaintiff in the *Higgins* case. Entry of judgment on this decision will, however, be stayed until February 15, 1989, to permit plaintiff to file an amended complaint in the event it can do so in compliance with Rule 11 of the Federal Rules of Civil Procedure.

The motions before the court are as follows: (1) a motion by plaintiffs, in which Owens–Illinois joins, to amend the complaint under F.R.Civ.P. 15(b) to allege causes of action against Celotex; (2) a motion by defendants to dismiss both cases for lack of subject matter jurisdiction; (3) a motion by plaintiff to drop Celotex as a defendant under Rule 21; (4) a motion by Owens–Illinois to dismiss for failure to join an indispensable party under Rule 19(b); (5) a motion by plaintiff to set aside that portion of the *Higgins* verdict finding Mr. Higgins comparatively negligent; (6) a motion by Owens–Illinois for determination of offsets required by settlements with co-defendants under N.Y.Gen.Oblig.L. § 15–108; and (7) a motion by defendants for a new trial because of improper statements made during plaintiff's closing arguments.

The four motions relating to subject matter jurisdiction are closely interrelated. In summary, their disposition is as follows. The complaint is deemed amended to add Celotex as a party defendant; this leads to a lack of complete diversity between the parties; Celotex is therefore dropped as a defendant under Rule 21 or 15(a) in order to preserve jurisdiction over the other parties, because this does not cause prejudice to the other defendants within the meaning of Rule 19.

## MOTION TO AMEND COMPLAINT

■ Plaintiff, joined by Owens–Illinois, moves for amendment of the *Higgins* complaint under F.R.Civ.P. 15(b) to add Celotex as a party. Of course, this motion alone cannot affect subject matter jurisdiction one way or the other. Even if Celotex's having proceeded through the trial is deemed consent to trying the issue of its liability, this consent could not confer subject matter jurisdiction on the court. Nevertheless, it is appropriate to rule upon this Rule 15(b) motion because of the bearing it has on the motion to dismiss for lack of subject matter jurisdiction.

Implied consent to the trial of an issue will be found, in general, when the parties "recognized that an issue not presented by the pleadings entered the case at trial." 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1493, at 462. "In a motion under rule 15(b) ... the most important question is whether the new issues were tried by the parties' express or implied consent and whether the defendant 'would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.'" *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977) (citations omitted).

This implied consent can be inferred from a party's failure to object to the introduction of evidence relating to the issue, *see, e.g., Sun–Fun Prods., Inc. v. Suntan Research and Devel. Inc.*, 656 F.2d 186 (5th Cir.1981), and from the introduction of evidence on that issue by the very party opposing the implied amendment, *see, e.g., Bradford Audio Corp. v. Pious*, 392 F.2d 67, 73 (2d Cir.1968). Both of these bases of inference are present in the instant case. Nor are any countervailing factors present that would tend to show lack of consent: a party's not having been represented by an attorney; the evidence supporting consent having all also borne on issues that were expressly included in the pleadings; or "prejudice" to a party, "prejudice in this context mean[ing] a lack of opportunity to prepare to meet the unpleaded issue." 6 C. Wright and A. Miller, *supra*, § 1493, at 467–68.

Rule 15(b) cannot, itself, expand the court's jurisdiction. *See, e.g., Falls Industries, Inc. v. Consolidated Chemical Industries, Inc.*, 258 F.2d 277, 285–86 (5th Cir.1958); *Bucky v. Sebo*, 208 F.2d 304, 307 n. 7 (2d Cir.1953). But there is no persuasive indication that a Rule 15(b) motion should be denied simply because it might lead to a jurisdictional defect, so long as

the court then proceeds to address that jurisdictional defect as is done here.

The rule provides that issues tried by consent "shall" be treated as if raised in the pleadings. In other words, once a finding of implied consent has been made, the court has no discretion not to treat the pleadings as amended. 6 C. Wright and A. Miller § 1493, at 469. But, even if the matter were discretionary, all pertinent factors would weigh in favor of the amendment.

Therefore, the motion to amend the pleadings is granted.

## MOTION TO DISMISS

All three defendants move to dismiss both cases for lack of subject-matter jurisdiction. The two cases are best addressed independently.

### Higgins

■ It is clear that subject matter jurisdiction is lacking as between plaintiff and Celotex since plaintiff has failed to allege or establish diversity. Therefore, as to Celotex, the motion to dismiss must be granted without prejudice, however, to the filing of an amended complaint alleging diversity if, after reasonable inquiry, a factual and legal basis for such an allegation exists.

The lack of diversity between plaintiff and Celotex also impairs jurisdiction over the case as between plaintiff and the other two defendants. The diversity statute has been construed as requiring "complete diversity," that is, the Court will not have jurisdiction over the action if the plaintiff shares citizenship with *any* of the defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

"The presumed theory behind the original grant of diversity jurisdiction in Article III was to provide a neutral, national forum for cases in which there would be a danger of bias in a state court against an out-of-state litigant. This justification for granting federal diversity jurisdiction does not apply to cases in which there are citizens from the same state on opposing sides of the litigation."

13B C. Wright, A. Miller and E. Cooper § 3605, at 398.

But this finding of lack of complete diversity does not end the inquiry into our jurisdiction over the *Higgins* case. See discussion below of plaintiff's Rule 21 motion.

### Johnson

■ Defendants' only argument for a jurisdictional defect in *Johnson* is that it was consolidated with *Higgins*. Defendants assert that, had it been clear from the start that Celotex was not a proper party to the *Higgins* case, then the Court would not have consolidated *Johnson* and *Higgins*. This assertion may or may not be correct: "although identity of parties strengthens the case for consolidation, it is not required." 9 C. Wright and A. Miller § 2384, at 264.

Regardless of how the Court would have ruled on the consolidation question had all the facts been known, the consolidation ruling is simply irrelevant to our jurisdiction over the *Johnson* case. "Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933); *accord, Garber v. Randell*, 477 F.2d 711, 716 (2d Cir.1973). Accordingly, the motion to dismiss the *Johnson* case is denied.

## MOTION TO DROP CELOTEX AS DEFENDANT

■ Plaintiff moves to drop Celotex as a defendant under Rule 21. This device is frequently used for the purpose of preserving diversity, so long as the defendant sought to be dropped is not "indispensable" under Rule 19(b). (Celotex is not "indispensable" here, as is discussed below.) *See generally* 7 C. Wright, A. Miller, M. Kane § 1685.

But the Second Circuit has indicated that Rule 21 is inappropriate for this purpose and that Rule 15(a) should instead be used.

*Kerr v. Compagnie de Ultramar*, 250 F.2d 860, 864 (2d Cir.1958).

I accordingly apply Rule 15(a). But although Rule 15(a) is the nominal vehicle for a motion to drop a party, the standard to be applied here is not the usual one under Rule 15(a), which gives broad discretion to the court. Instead, "[r]egardless of the procedural vehicle for the motion, unless it appears that a non-diverse defendant cannot be dropped from an action *without prejudice to the remaining defendants,* the motion should be granted and a failure to do so is an abuse of discretion." *Kerr v. Compagnie de Ultramar, supra,* at 864; *accord Samaha v. Presbyterian Hospital,* 757 F.2d 529, 531 (2d Cir.1985).

*Samaha* declares that the prejudice referred to is the same kind considered in determining whether a party is "indispensable" under Rule 19(b). 757 F.2d at 531. For that reason, the question of prejudice is addressed below, in connection with the Rule 19 motion.

## RULE 19 MOTION

■ Defendants move for dismissal of the *Higgins* case on the ground that Celotex was an "indispensable" party that could not be joined at trial.

The plain meaning of the opening of section (b) of this Rule is that a case should be dismissed only when a party described in section (a) cannot be joined. "The structure of Rule 19 reflects the analytical sequence that a court should follow in deciding a party joinder problem." 7 C. Wright, A. Miller and M. Kane § 1604, at 40. Here, plaintiffs have not shown that Celotex is a party described in section (a). For this reason, the Rule 19 motion must fail, but Rule 19 still has a bearing here, for, as observed above, its "prejudice" criterion is material to a decision on the Rule 21/Rule 15(a) motion.

"It is settled federal law that joint tortfeasors are not indispensable parties." *Samaha,* 757 F.2d at 531. This is sensible, because a joint tortfeasor fits neither of the alternatives of Rule 19(a). Complete relief can be had between the parties in his absence, due to joint and several liability; and the joint tortfeasor does not "claim[ ] an interest relating to the subject of the action."

Defendants' arguments on the four factors enumerated in Rule 19(b) are considered below. However, these factors are not the exclusive ones that I take into account; I look also to the facts of each case in light of the "equity and good conscience" test set forth in the rule.

In connection with the rule's "prejudice" factor, Owens–Illinois asserts, without giving any particulars, that in Celotex's absence Owens–Illinois would have been able to use different trial strategies, such as calling different witnesses or developing different theories of medical causation. Owens–Illinois also asserts that in Celotex's absence Owens–Illinois would not have been "painted" with such a "broad brush" by plaintiffs' evidence, and that the Court's limiting instructions were insufficient to counteract that evidence's effect on the jury. And last, Owens–Illinois voices concern over prejudice to Celotex but does not intimate what that prejudice could be.

Prejudice under this portion of the rule is to be evaluated pragmatically rather than with regard to theoretical possibilities. "Would the absentee be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor? ... Would any party be exposed to a fresh action by the absentee, and if so how serious is the threat?" 1966 Advisory Committee Note.

Here, Owens–Illinois' assertions concerning differing trial strategy is general and speculative, and its dissatisfaction with the Court's limiting instructions, conclusory. Moreover, it appears that Celotex's absence from the *Higgins* case would not have affected the bulk of the evidence in the first place, for all of the evidence of Celotex's knowledge over the years would have remained relevant to the *Johnson* case.

Owens–Illinois argues further that the jury has apportioned liability among several parties including Celotex and that "the Court would have no way of envisioning what verdict the jury would have reached had Celotex not been a defendant in the

trial. Any attempt to do so would be a rather straightforward violation of due process."

But there is precedent for "reallocating" proportionate responsibility among defendants, such as a situation in which one of the defendants has filed for bankruptcy after verdict. *See, e.g., Austin v. Raymark Industries, Inc.,* 841 F.2d 1184, 1195–96 (1st Cir.1988). This Court has uncovered no precedent intimating that salvaging a verdict in this way invades the province of the jury or constitutes "prejudice" within the meaning of Rule 19. Indeed, this reallocation affects the jury verdict in a neutral manner, taking Celotex's 10% and distributing it among the other responsible parties in proportion to the fault that the jury found. Thus, the original jury verdict found the three defendants each 10% responsible, Mr. Higgins to have been 10% comparatively negligent, and ten settling co-defendants each 6% responsible. Reallocating Celotex's 10%, Higgins, Owens–Illinois, and Raymark would each be charged with $^{10}$⁄₉₀ths of Celotex's share, and the settling defendants would each be charged with $^{6}$⁄₉₀ths of Celotex's share. The final fault allocation would be as follows:

| Higgins | 11 and ⅑% |
| Raymark | 11 and ⅑% |
| Owens–Illinois | 11 and ⅑% |
| Ten settling co-defendants: | 6 and ⅔% each |
| | |
| Total ... | 100% |

*See also Publicker Industries, Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065 (3rd Cir.1979) (defendant not necessarily indispensable although motion to drop him was brought post-verdict); *Wolgin v. Atlas United Financial Corp.,* 397 F.Supp. 1003 (E.D.Pa.1975) (same when motion was brought after bench trial).

In connection with the rule's "other adequate remedy" factor, defendants argue that plaintiff could sue in the Florida state courts and that she would there have "jurisdiction" over all three defendants. Whether or not this is true need not concern us for purposes of ruling on the Rule 21 or 15(a) motion, for it is only prejudice "to the remaining defendants" that is material. *Kerr v. Compagnie de Ultramar, supra.*

Therefore, the motion to dismiss for failure to join an indispensable party is denied, and the motion to drop Celotex as a defendant is granted. The Court thus retains its diversity jurisdiction over defendants Raymark and Owens–Illinois.

## COMPARATIVE NEGLIGENCE

Turning to the first of the motions that does not concern subject matter jurisdiction, plaintiff moves under Rule 50(b) to set aside that portion of the *Higgins* verdict in which the jury found decedent partially responsible for his own injuries, causing a reduction in plaintiff's recovery by 10% or, after the reallocation discussed above, by 11 and ⅑%. Plaintiff asserts that defendant failed to make out a prima facie case (1) that Mr. Higgins' smoking was negligent, or (2) that his smoking was a proximate cause of his injuries.

On the first matter, lack of ordinary care, the evidence showed that Mr. Higgins smoked heavily for 44 years, that he stopped smoking cigarettes in the early 1970's "because of the cancer scare," and that he continued smoking a pipe until 1974. In addition, the Court in its jury charge observed that the U.S. Surgeon General's report on the effects of smoking was issued in 1964.

On the second issue, proximate cause, there was also ample evidence to support the jury's finding. The testimony showed that smoking causes heart disease, bronchitis, and emphysema, and that smoking aggravates the effects of asbestosis. Plaintiffs as the non-moving party here are entitled to the benefit of every legitimate inference that can be drawn from the evidence, *Simblest v. Maynard,* 427 F.2d 1 (2d Cir. 1970), and the case should go to the jury even where there are conflicting inferences to be drawn from the facts. *See, e.g., Onufer v. Seven Springs Farm, Inc.,* 636 F.2d 46, 50 (3d Cir.1980); 9 C. Wright and A. Miller § 2527, at 564.

Therefore, the motion to set aside the contributory negligence verdict is denied.

## DETERMINATION OF OWENS–ILLINOIS' SETTLEMENT

■ The judgment against defendants here is to be reduced by the amount of plaintiff's settlements with former co-defendants, or by the amount of consideration stipulated in plaintiff's release of them, or by the proportion of fault that the jury attributes to them, whichever is greatest. N.Y. General Obligations Law § 15–108(a).

The only settlement that is in dispute is that of Owens–Corning Fiberglas Corp. in the *Higgins* case. Both plaintiff and defendants have agreed to be bound by the amount that Owens–Corning Fiberglas attributed to settlement of the case. In a letter from Michael B. Sena to the Court dated December 30, 1988, counsel for Owens–Corning Fiberglas stated that it had settled the *Higgins* case for $150,000, which is greater than the proportion of fault attributed to that company by the jury.

In none of the other nine instances did the co-defendants in *Higgins* settle for an amount greater than the proportion of fault set forth in the jury verdict: 6%, or, after reallocation, 6 and ⅔%. Accordingly, the *Higgins* verdict against Raymark and Owens–Illinois will be reduced by nine times 6 and ⅔% (i.e. 60%), plus $150,000.

## MOTION FOR MISTRIAL

■ Defendants also move for a new trial on the ground that plaintiff's counsel made various improper remarks during his closing argument. The remarks complained of fall into three categories: pejorative characterizations of defendants and their witnesses; references to defendants' wealth and to plaintiff's being relatively less well off; and alleged invocations of the "golden rule" argument. Plaintiff's counsel does not deny having made any of the statements, but asserts that they were permissible parts of his argument. He also notes that his closing and rebuttal took approximately three hours; that defendants objected to none of the remarks at the time, and did not ask the Court for a curative instruction; and that the Court gave its usual charge to the jury concerning deciding the case on the evidence rather than on sympathy or emotion, and also charged that arguments of counsel are not evidence.

"In ruling on a motion for a new trial based on attorney misconduct, the trial court must determine whether counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury. The trial judge has considerable discretion in determining whether a new trial is required." *Strobl v. New York Mercantile Exchange*, 582 F.Supp. 770, 780 (S.D.N.Y.1984); *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3d Cir.1978). *See also Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1171 (2d Cir.1974) (new trial is needed where improper arguments "depriv[e] the opposite party of a fair trial").

The first group of statements complained of is characterized as "inflammatory" in general. None is so inflammatory as to require a new trial. Particularly in view of the Court's later charges to the jury, "the inflammatory language did not overbear their judgment given the totality of the trial." *Guccione v. Hustler Magazine*, 632 F.Supp. 313, 326 (S.D.N.Y.1986), *rev'd on other grounds*, 800 F.2d 298 (2d Cir.1986).

The second group of statements complained of is that in which reference was made to plaintiffs' and defendants' relative size or financial resources. Such remarks are not per se grounds for a new trial. "Of course, this argument, as excerpted above, would not require reversal if counsel had not gone beyond the brink of rational argument in other aspects." *Draper v. Airco, Inc., supra.* In the context of the summation as a whole, the Court does not find counsel's remarks here to have created undue passion.

The last group of statements complained of is alleged appeals to the "golden rule" argument. This is an improper type of rhetoric in which counsel asks the jury to award damages in the amount that the jury itself would wish. It applies to damages only and not to liability. *Burrage v. Har-*

*rell*, 537 F.2d 837 (5th Cir.1976). It does not bar other uses of the pronoun "you" in an appeal to the jurors' common sense. *Bankers Trust Co. v. Publicker Industries, Inc.*, 641 F.2d 1361, 1366 (2d Cir. 1981). This distinction disposes of all but two of the statements of which defendants complain. The remaining two were not of a nature unduly to affect the jury, especially in view of our later charges concerning sympathy, arguments of counsel, and the measure of damages. *Cf. McNamara v. Dionne*, 298 F.2d 352 (2d Cir.1962) (new trial was found unnecessary where trial judge's improper invocation of golden rule argument in pre-trial charge was corrected in final charge and counsel did not object at time of pre-trial charge).

Therefore, the motion for a new trial is denied.

## AMOUNT OF JUDGMENT

Applying all of the foregoing to the jury verdict, the Clerk is directed to enter judgment as follows.

In *Higgins*, no recovery may be had against Celotex at this time, and Celotex's 10% proportion of fault should be allocated among the remaining parties as explained above in connection with defendant's Rule 19 motion. Judgment against each of Raymark and Owens–Illinois must therefore be entered for (a) $1,000,000.00 in compensatory damages, less the 60% attributable to nine settling co-defendants and the 11 and ⅑% attributable to Mr. Higgins, and less the $150,000.00 attributable to Owens–Illinois as described above, or $138,888.89; plus (b) $1,000,000.00 in punitive damages.

In *Johnson*, judgment against each of Raymark, Owens–Illinois and Celotex must be entered for (a) $350,000.00 in compensatory damages, less the $245,000.00 attributable to the seven settling co-defendants, for a total of $105,000.00; plus (b) punitive damages in the amount of $1,000,000.00 against each of Celotex and Raymark, and $800,000.00 against Owens–Illinois.

The Clerk is directed to mail a copy of the within to all parties and to enter judgment as set forth herein in the *Johnson* action. The Clerk is further directed to enter judgment on February 15, 1989, in the *Higgins* action unless plaintiff shall, prior to that date, file an amended complaint alleging diversity jurisdiction against defendant Celotex.

SO ORDERED.