**BRISTOL–MYERS SQUIBB COMPANY, et al**

v.

**SAFETY NATIONAL CASUALTY CORP.**

**No. 1:98–CV–1564.**

United States District Court,
E.D. Texas,
Beaumont Division.

March 29, 1999.

---

Robert Quentin Keith, Keith & Weber PC, Attorneys At Law, Johnson City, TX, Andrew T. Berry, Thomas W. Ladd, Arnold L. Natali, Jr., McCarter & English, Newark, NJ, for Bristol–Myers Squibb Company, plaintiffs.

Howard Louis Close, Orgain Bell & Tucker LLP, Beaumont, TX, for Safety National Casualty Corporation, defendant.

## MEMORANDUM OPINION ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND OVERRULING DEFENDANT'S OBJECTIONS

HEARTFIELD, District Judge.

Pending is plaintiffs' motion to remand. Pursuant to 28 U.S.C. § 636(b), this mo-

tion was referred to United States Magistrate Judge Earl S. Hines for conclusions of law and recommendation for disposition. On March 9, 1999, the magistrate judge issued a report recommending that plaintiffs' motion to remand be granted for lack of subject matter jurisdiction.

The court has received and considered the Report and Recommendation of the United States Magistrate Judge, along with the record in this matter. Defendant timely filed objections to this report on March 23, 1999. This requires a *de novo* review of the specific portions of the report to which objections have been made. *See* Fed.R.Civ.P. 72(b).

In its objections, Safety National Casualty Corporation ("SNC") raises the same arguments considered by the magistrate judge in his Report and Recommendation. SNC has not presented anything beyond perfunctory argument that the magistrate's findings and conclusions of law were incorrect. Independent review indicates that the magistrate judge's findings and legal conclusions are correct. As such, SNC's objection is without merit. Having considered this matter *de novo*, it is

**ORDERED** that the magistrate judge's report and recommendation is **ADOPTED** and defendant's objections are **OVERRULED.** A separate order will be entered in accordance with the magistrate judge's recommendations.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE MOTIONS TO CONSOLIDATE AND REMAND

HINES, United States Magistrate Judge.

These actions are referred to the undersigned United States magistrate judge for consideration of pretrial matters. (1:98–CV–1564 Dockt. No. 7); (1:98–CV–1571 Dockt. No. 3). The referral orders direct the magistrate judge to submit reports and recommendations regarding motions for injunctive relief, judgment on pleadings, summary judgment and dismissal.[1] They direct the magistrate judge to determine all other pretrial motions.[2]

Before the court are motions by Bristol–Myers Squibb Company and Medical Engineering Corporation (hereinafter collectively referred to as "BMS") to dismiss, abate or consolidate these two actions and to remand them both to state court. These motions request relief akin to dispositive matters for which the district judge requested reports and recommendations. Therefore, to preserve the district judge's prerogative of deciding whether these actions shall be entertained in federal court or remanded, these motions will be addressed by report and recommendation. *See In Re U.S. Healthcare*, 159 F.3d 142 (3rd Cir.1998) (absent parties' consent, magistrate judges are without authority to remand because "insofar as proceedings in federal court are concerned, the [remand] order is the functional equivalent of an order of dismissal.")

### I. Introduction

■ These cases involve unique facts and several murky, if not novel, questions of federal diversity jurisdiction and removal procedure. The motion to remand turns, first, on whether subject matter jurisdiction is lacking when adverse parties on a counterclaim are not diverse in their citizenship. If jurisdiction exists, the motion then turns on several procedural questions as to (a) whether a party dismissed as a defendant but remaining as a counterclaimant must also consent to removal; (b) whether the "substantial progress doctrine"[3] bars removal of a state court action

---

1. *See* 28 U.S.C. § 636(b) (1994); Local Rules for Assignment of Duties to Magistrate Judges.

2. *Id.*

3. Under 28 U.S.C. § 1446(b), an action "may not be removed on the basis of [diversity jurisdiction] more than one year after commencement of the action." 28 U.S.C. § 1446(b). Congress intended the statute as a

initially filed in 1993, formally dismissed in 1996 under a "standstill agreement," but reinstituted in 1998 by the filing of an amended petition under the same docket number; and, (c) whether an insurer waived the right to remove by issuing a policy containing a "service of suit" clause.

## II. Nature of the Actions

The action bearing docket number 1:98–CV–1564 (hereinafter "Bristol–Myers I") is a suit brought by BMS against its liability insurance carrier, Safety National Casualty Corporation (hereinafter "SNC"), seeking declaratory judgment that SNC has a duty to defend or indemnify BMS for personal injury claims brought by consumers of breast implant products. SNC's liability to BMS has an alleged value of approximately $6 million. (Thirteenth Am.Pet. ¶ 18.)

The action bearing docket number 1:98–CV–1571 (hereinafter referred to for convenience as "Bristol–Myers II,") is a suit brought by SNC seeking declaratory judgment as to its rights and obligations under a Standstill Agreement with BMS. (1:98–CV–1571 Compl. at 6–7.); *see also infra* note 5. Also, SNC, invoking 9 U.S.C. § 3, seeks a stay of all litigation by BMS until arbitration is completed. (*Id.* at 8.)

## III. Original Proceedings

### A. *Bristol–Myers I*

On March 19, 1993, Bristol–Myers Squibb Company and Medical Engineering Corporation ("MEC") instituted suit in the 58th Judicial District Court of Jefferson County, Texas. (Cause No. A–0145672, State Court Civil Dockt. Sheet at 1.) Defendants were SNC and many other companies that, like SNC, issued liability insurance policies to BMS.[4]

BMS alleged that it was a defendant in more than 2,500 personal injury suits brought by consumers who used silicone breast implant products manufactured or marketed by BMS. (Original Pet. ¶ 90.) Further, BMS alleged it purchased liability insurance from defendants who refused to defend BMS in those personal injury suits, and further refused to pay or indemnify BMS for liability that might be imposed in those actions. (Original Pet. ¶¶ 114, 115.) BMS sought declaratory judgment that the breast implant suits were "occurrences" within the meaning of the various insurance policies and that the insurers' failure to defend and indemnify were breaches of their obligations under the insurance contracts. (Original Pet. ¶¶ 104, 107.) BMS also sought monetary damages for all damages, costs and payments they incurred as a result of the breast implant litigation. (Original Pet. ¶ 116.)

Hon. James W. Mehaffy, judge of the 58th judicial district court of Jefferson County, Texas, presided over this multiparty litigation from its inception. Some insurers counterclaimed against BMS. Despite the complexity resulting from the legal issues and sheer multitude of litigants and numerous claims, Judge Mehaffy managed to generate steady progress toward settlements without necessity of a full-scale trial.

BMS and SNC did not settle their disputes but they did reach an interim agreement in contemplation of alternative dispute resolution. After the case was pending before Judge Mehaffy for over two years, BMS and SNC entered a "Standstill Agreement." (Standstill Agreement, Def.'s Mem.Supp.Resp. to Pls' Motion for Remand at Ex. A4.) The July 26, 1995, agreement recounted that vari-

---

means of reducing the opportunity for removal after "substantial progress" had been made in state court. H.R.Rep. No. 889, 100th Cong., 2d Sess. 72 reprinted in 1988 U.S.C.C.A.N. 5982, 6032–33.

4. The BMS petition asserts that suit was instituted originally against more than 100 insurers (Thirteenth Am.Pet. ¶ 23.) SNC's brief states that suit was brought against 77 defendants. (Def.'s Mem.Supp.Resp. to Pls' Motion for Remand at 3.)

ous lawsuits involving coverage-related disputes were pending in Texas, New Jersey, Missouri and in another forum identified only as "Index No. 93/1200948." (*Id.*) It recited that BMS and SNC determined that it was in their mutual interest to hold all coverage-related disputes between and among them in "abeyance," and to "defer and possibly avoid" the need to litigate. (*Id.*) The contemplated alternative dispute mechanism was arbitration at a later date.[5]

BMS and SNC thus agreed to dismiss without prejudice their respective and sundry actions pending in various courts. BMS reserved the right to again initiate litigation if SNC attempted to rescind the insurance policies in question, while SNC reserved the right to claim any such dispute to be subject to mandatory arbitration. Finally, both parties agreed to suspend operation of relevant statutes of limitations and similar equitable time-based defenses.

The Standstill Agreement effectively put on hold the dispute between BMS and SNC. Meanwhile, BMS continued to prosecute the Jefferson County, Texas, action against the remaining defendants. As noted earlier, that action then progressed by virtue of numerous settlements.[6]

By April 1, 1998, BMS settled with all original defendants that issued policies covering "occurrences," except SNC and Employers Insurance of Wausau (hereinafter "Wausau"). Wausau had a counterclaim pending against BMS. Thus, only the BMS claims against Wausau and Wausau's counterclaim were actively pending.

By then, the Jefferson County, Texas action had been pending for over five years. On that date, BMS filed its Thirteenth Amended Petition. Unexpectedly, the amended petition named SNC as a defendant but did not assert any claim against Wausau. Thus, the only defendant mentioned in the amended petition was SNC.[7]

SNC interpreted Texas law as providing that the amended petition operated as a dismissal of Wausau. Under that view, only BMS and SNC remained. SNC further deduced that, for the first time since the action was initiated, there existed complete diversity of citizenship between the parties.[8] Capitalizing on this opportunity, SNC promptly filed in this court a notice of removal pursuant to 28 U.S.C. § 1446(a). The action was removed to this court where it now pends.

## B. *Bristol–Myers II*

On April 30, 1998, less than a week after removal of Bristol–Myers I from the Jefferson County, Texas state court, SNC sued BMS in federal court for the eastern

---

5. The Standstill Agreement infers, without ever expressly providing, that upon entry of final judgment in the Texas court, either party could compel the other to arbitrate. In paragraph 3, the parties agree not to commence arbitration except in accordance with and subject to conditions stated in paragraph 4. Paragraph 4 provides that the parties agree not to initiate arbitration proceedings until a final judgment is entered in the Jefferson County, Texas, action.

6. Some insurers issued policies protecting against liability arising from "claims made" during their respective policy periods. Others, like SNC, issued policies covering liability arising from "occurrences" during the policy periods. Before this action was removed, Judge Mehaffy severed coverage disputes concerning the "claims made" policies for sepa-

rate trial. That severed action was tried in state court during November and December, 1998.

7. BMS alleged that it entered the standstill agreement on the basis of an arbitration provision contained in excess policies issued by SNC. BMS further alleged that subsequent discovery revealed that the underlying insurance policy to which excess insurers, including SNC, "followed form" did not contain arbitration language. Thus, BMS asserted that Texas was the proper forum and jurisdiction to dispose of the matter. (Thirteenth Am.Pet. ¶¶ 24–27.)

8. BMS is a Delaware corporation with its principal place of business in New York. Defendant SNC is a Missouri corporation with its principal place of business in Missouri.

district of Texas, Beaumont division. SNC invokes federal jurisdiction based solely on diversity of citizenship.[9] SNC seeks a declaratory judgment of its rights and obligations under the Standstill Agreement. Specifically, SNC claims that all disputes arising under the terms of SNC's policies and the Standstill Agreement must be submitted to a decision of a board of arbitration. This action appears to assert essentially the same claims as once asserted by SNC in a Missouri federal action that SNC dismissed pursuant to the parties' standstill agreement.

## IV. Pending Motions

■ Following removal of Bristol–Myers I and commencement of Bristol–Myers II, the parties submitted a flurry of motions. Jockeying for competitive advantage, the parties disagree on the order in which the motions should be considered. However, one prong of BMS's motion to remand raises the question of subject matter jurisdiction. That is an issue of paramount concern, and should be addressed, *sua sponte* if necessary, at the threshold of any federal action. *Moody v. Empire Life Ins. Co.*, 849 F.2d 902, 904 (5th Cir.1988). Further, common sense bids the court to determine if the action is to be remanded before addressing the merits of the dispute.

## V. Removal of Cases from State Courts

The right to remove a case from state to federal court is an unconventional procedure:

> Removal is quite an anomalous form of subject matter jurisdiction. It gives a defendant who has been sued in a state court of competent jurisdiction the right to substitute a federal forum when he or she chooses to do so for the forum originally selected by the plaintiff, although the defendant's choice of a federal forum is extremely limited.

> There was no procedure comparable to removal at English common law, nor is removal jurisdiction mentioned in the Constitution. Nevertheless, there has been some provision for the removal of cases from state to federal courts ever since the original Judiciary Act of 1789.

14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3721 (1998) (footnotes omitted).

Thus, the right of removal is purely American and purely statutory. Congress appears to have been motivated by two principal factors. First, as to federal question cases, Congress sought to capitalize on and develop in federal judges better expertise on questions of federal law that state court judges might not be as competent to *Boys Mkts. v. Retail Clerks Union*, 398 U.S. 235, 246, 90 S.Ct. 1583, 1590, 26 L.Ed.2d 199 (1970) (federal question removal provisions may have been intended to provide a forum for the protection of federal rights or to encourage the development of expertise by federal courts in interpretation of federal law). Second, the right of removal was designed to protect nonresidents from the local prejudices of state courts. *See Dugas v. Jefferson County*, 911 F.Supp. 251, 253 (E.D.Tex. 1995).

■ Title 28, United States Code section 1441, currently governs removal of state actions to federal district court. 28 U.S.C. § 1441 (1994). Under section 1441, only actions over which federal courts have original jurisdiction may be removed. *Id.* While the right of removal exists beyond question, federal courts generally construe removal statutes strictly to prevent encroachment on state courts' jurisdiction and to preserve comity, as well as to protect rights of plaintiffs to fair treatment. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214

---

9. SNC does not assert federal question jurisdiction. It brings suit under 9 U.S.C. § 3

seeking a stay of all litigation against BMS.

(1941); *Leffall v. Dallas Indep. School Dist.*, 28 F.3d 521, 524 (5th Cir.1994).

■ Comity is the principle whereby the courts of one jurisdiction give effect to laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. Concerns of comity are particularly significant in diversity cases, since state courts should be allowed to decide state cases unless the action falls squarely within the bounds Congress has created. *See Phillips v. Allstate Ins. Co.*, 702 F.Supp. 1466, 1468 (C.D.Cal.1989). The Supreme Court noted in 1941 that in order to maintain the rightful independence of state governments, federal courts must "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Shamrock Oil & Gas Corp.*, 313 U.S. at 108–109, 61 S.Ct. at 872. This principle is the core rationale behind why courts strictly construe removal statutes.

■ In addition, fundamental fairness dictates that if a federal court has doubts about its jurisdiction, it should resolve those doubts by ordering a remand. *See, e.g., Moore v. Mobil Oil Corp.*, 904 F.Supp. 587 (E.D.Tex.1995); *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 694 (5th Cir.1995). Otherwise, the state-court-plaintiff would risk the possibility of winning a final judgment in federal court only to have it determined later on appeal that the court lacked jurisdiction. This would require the plaintiff to return to state court and relitigate the case. *See Radeschi v. Commonwealth of Pennsylvania,*

846 F.Supp. 416 (D.C.Pa.1993) (lack of jurisdiction would make any judgment in a case void and for that reason removal statutes should be strictly construed).

## VI. Diversity Jurisdiction

■ As noted, only civil cases of which district courts of the United States have original jurisdiction may be removed from state courts to federal district courts. The only ground for federal jurisdiction invoked by SNC for removing Bristol–Myers I is that conferred under 28 U.S.C. § 1332, colloquially called "diversity jurisdiction." [10] For diversity jurisdiction to exist, there must be complete diversity of citizenship between all plaintiffs and all defendants.[11] When corporations are litigants, they are deemed to be citizens of any state in which incorporated and also of states where their principal places of business are located.[12]

## VII. Arguments

In moving to remand, BMS argues that Wausau, whose citizenship is not diverse from co-plaintiff MEC, remains in the action as defendant.[13] BMS asserts that its failure to name Wausau in its thirteenth amended petition was inadvertent; that Texas law provides a clear remedy for such inadvertence and allows BMS to file another amended petition naming Wausau as defendant; and that the cause of action asserted in such curative amended petition would relate back to the date of the original petition.[14]

---

10. 28 U.S.C. § 1332 provides in part:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs, and is between—

(1) citizens of different States...."
28 U.S.C. § 1332.

11. *See Great Northern R. Co. v. Galbreath Cattle Co.*, 271 U.S. 99, 102–03, 46 S.Ct. 439, 440, 70 L.Ed. 854 (1926).

12. 28 U.S.C. § 1332(c)(1).

13. Prior to filing of the thirteenth amended petition, complete diversity was lacking because co-plaintiff Medical Engineering Corporation and defendant Wausau were both citizens of Wisconsin. Co-plaintiff MEC is a subsidiary corporation of BMS organized under the laws of Delaware with its principal place of business in Wisconsin. (Original Pet. § 1.) Wausau is a corporation organized under the laws of Wisconsin. (Original Pet. § 25.)

14. BMS relies on *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 831 (1994).

Further, BMS argues that even if the thirteenth amended petition dismissed Wausau as a defendant, Wausau's counterclaim against BMS and MEC remained pending. There is no diversity of citizenship between Wausau and the co-plaintiff MEC. Therefore, as viewed by BMS, this court does not have subject matter jurisdiction and the case was improperly removed.

To this latter argument, SNC responds that BMS's thirteenth amended petition was illegal under Texas law because it attempted a wholesale substitution of the party defendant.[15] Alternatively, SNC responds that Judge Mehaffy would be required under Texas law to sever the action asserted in the Wausau counterclaim from the BMS action asserted in the thirteenth amended petition.[16] Thus, in either event, the Texas court would consider the newest BMS petition as an entirely new or separate action involving only the parties named. It was this entirely new action that SNC removed to federal court. The original state court action involving Wausau's counterclaim would remain on the docket separately. Finally, SNC argues that if there is to be a remand, the only action subject to the remand should be Wausau's counterclaim against BMS.

## VIII. Application and Analysis

### A. Wausau is not a Defendant

■■ Texas law clearly holds that an amended petition supplants all former petitions and operates to dismiss parties and causes of action if they are omitted from the amended pleading. *See* Tex.R.Civ.P.

65; *Webb v. Jorns,* 488 S.W.2d 407, 409 (Tex.1972). No formal action by the trial judge is necessary for such a dismissal to be effective. *Id.* Thus, BMS's argument that non-diverse Wausau remained a defendant at the time of removal is not persuasive.

If this case presently remained in state court, Texas law might indeed allow BMS to file another amended complaint naming Wausau as defendant. Further, upon BMS's showing that its failure to name Wausau in the thirteenth amended petition was inadvertent, Texas law might consider the cause of action to relate back to the original petition. But these polemics actually undercut the BMS thesis that Wausau presently is a defendant. If that were so, there would be no need for yet another amended petition, nor a relation back rule of construction.

■ In any event, the motion to remand cannot be decided on the basis of what may happen following a remand. Federal district courts must judge their jurisdiction on the status of cases at the time of removal. *See Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061 (5th Cir.1992), *cert. denied* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). If there exists a basis for federal court jurisdiction at the time of removal, subsequent attempts to stipulate away the basis for federal jurisdiction will be ineffective.[17] Further, attempts to defeat diversity by adding nonindispensible, nondiverse parties are generally unsuccessful.[18]

---

**15.** SNC relies on *Trahan v. Roberts,* 48 S.W.2d 503, 506 (Tex.Civ.App.1932).

**16.** SNC relies on *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 682–84 (1932).

**17.** *See St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 292, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938) (after removal a plaintiff cannot by stipulation, by affidavit, or by amendment of pleadings deprive a federal court of jurisdiction); *see also HWJ Inc. v. Burlington Ins. Co.,* 926 F.Supp. 593, 594 (E.D.Tex.1996) (plaintiff may not defeat re-

moval by submitting an affidavit which alters the damage request made in initial petition).

**18.** *See Hensgens v. Deere & Co.,* 833 F.2d 1179 (5th Cir.1987) (district court should use its discretion in deciding whether to add a nondiverse nonindispensable party to a removed action; if joinder is granted then remand is proper) *appeal after remand* 869 F.2d 879 *rehearing denied* 875 F.2d 858 (5th Cir.1989); *see also Kaib v. Pennzoil,* 545 F.Supp. 1267 (C.D.Pa.1982) (nondiverse defendants were not indispensable parties thus plaintiff's attempt to add them following removal did not

## B. Wausau's Counterclaim was not Dismissed

 Under Texas law, voluntary nonsuit of a plaintiff's cause of action is ineffective to dismiss a pending counterclaim against the plaintiff. Texas procedural rules dictate that, "[w]here the defendant has filed a counterclaim seeking affirmative relief, the plaintiff *shall not* be permitted by a discontinuance of his suit, to prejudice the right of the defendant to be heard . . . ." Tex.R.Civ.P. 96 (emphasis added). Additionally, according to Texas precedent, a voluntary dismissal or nonsuit does not discontinue a defendant's pending counterclaim. *See Thompson v. Gaither,* 45 S.W.2d 1106 (Tex.App.—Texarkana 1932, writ refused). The rationale is clear: A plaintiff should not by way of a voluntary dismissal extinguish a defendant's right to potential relief on a counterclaim. Therefore, SNC's argument that only it and BMS are parties to the action removed to this court is incorrect.

BMS's thirteenth amended petition might be viewed by a Texas court as an illegal attempt to effect wholesale substitution of defendants. Similarly, if this case were still pending in state court, Texas law might require severance of the coverage-related cause of action asserted by BMS against SNC from the counterclaim asserted by Wausau. However, neither occurred before removal. Thus, SNC removed from the Texas court an action wherein BMS asserts a cause of action against SNC and Wausau asserts a claim against BMS and the non-diverse co-plaintiff, MEC.

 Accepting arguendo the parties' respective contentions regarding Texas law, one could conclude that if the suit were pending in state court, the trial judge might allow another amended petition to correct an inadvertent omission of a defendant's name. The trial judge, however, might instead dismiss or sever the claim asserted by BMS against SNC in the thirteenth amended petition. However, such speculation is pointless. As noted earlier, this court must examine its subject matter jurisdiction based on a snapshot taken at the time of removal from state court. What the state court would have done had the case not been removed, or what the state court will do following any potential remand, simply does not inform this court's determination.

## C. Absence of Diversity Between Parties to Counterclaim

The parties' written briefs and the undersigned's independent research do not disclose precedent involving facts identical or analogous to the instant case. BMS's original coverage-related claim against non-diverse Wausau is gone, but Wausau's counterclaim still pends. If Wausau's counterclaim is ignored, subject matter jurisdiction exists because BMS and SNC are citizens of different states.[19] If the counterclaim is acknowledged, original subject matter jurisdiction does not exist because Wausau and BMS's subsidiary, MEC, are both citizens of Wisconsin. Both the coverage claim and the counterclaim exist in the same action. Thus, the issue is whether lack of diversity between parties to the counterclaim deprives the court of original jurisdiction.

 This conundrum could be resolved conveniently by remanding the Wausau counterclaim to state court, as SNC suggests, leaving the BMS coverage claim against diverse SNC to be tried in federal court. However, authority for piecemeal or partial remand exists only when removal jurisdiction is based on existence of a federal question.[20] SNC does not cite, and

---

divest the court of jurisdiction and compel remand).

**19.** *See supra* note 8 and accompanying text.

**20.** 28 U.S.C. § 1441(c) provides that:

"[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 . . . is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may

the court's independent research fails to disclose authority for a partial remand in actions founded on diversity of citizenship.

Similarly, jurisprudence regarding fraudulent joinder is inapplicable. This case is not properly categorized as one in which non-diverse Wausau was fraudulently joined by BMS to defeat diversity jurisdiction. Indeed, Wausau "joined" BMS and MEC. Thus, cases cited by SNC wherein parties are realigned or actions declared separate and independent due to fraudulent joinder are factually inapposite to the current action.

■ Absent precedent, this court must articulate a rationale for declaring whether subject matter jurisdiction exists by virtue of diversity of citizenship under these circumstances. When so doing, it is appropriate to begin by remembering that Congress clearly intended that disputes between citizens of same states remain out of federal courts.[21] BMS and Wausau were adverse parties from the outset of the litigation. It is illogical to think that diversity jurisdiction is destroyed so long as they both remain in the case in an adverse posture even if their roles are reversed.[22] There is no discernible basis to conclude that Congress would insist any less on diversity of citizenship when the original hunter becomes the subsequent prey. Thus, lack of diversity between parties to a lingering counterclaim would deprive the federal court of subject matter jurisdiction just as surely as lack of diversity between an original plaintiff and original defendant.

Second, counterclaims are not ignored when determining subject matter jurisdiction under 28 U.S.C. § 1332. *See Spectacor Management Group v. Brown*, 131 F.3d 120 (3rd Cir.1997) (counterclaim may be considered by the court in determining amount in controversy); *Fenton v. Freedman*, 748 F.2d 1358 (9th Cir.1984) (jurisdiction proper where plaintiff's claims less than requisite amount in controversy but defendant's counterclaims exceeded the necessary amount). If a counterclaim is to be factored into the court's determination of the amount in controversy, it is logical to assume the same when deciding if diversity of citizenship is present.

■ Third, statutes conferring removal jurisdiction are strictly construed against removal. *See, e.g., Leffall*, 28 F.3d at 524. Where, as here, there is doubt regarding the presence of subject matter jurisdiction, principles of comity and fundamental fairness argue for remand.

Finally, SNC will not be prejudiced or permanently harmed by remand. If Texas law operates as SNC suggests following remand, i.e., the cause of action asserted by BMS against SNC in the thirteenth amended petition will be dismissed or severed, the claim will become wholly separate and distinct. It may, at that point, become unambiguously removable.[23]

determine all issues therein, or, in its discretion may remand all matters in which state law predominates."
28 U.S.C. § 1441(c).

21. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (Justice Marshall concluding that Congress intended there would be no diversity jurisdiction when opposing parties were citizens of the same state).

22. The generally accepted test for realignment is whether the parties with the same "ultimate interests" in the outcome of the action are on the same side. *See Lowe v. Ingalls Shipbuilding, a Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1177–78 (5th Cir.1984).

*Cf. East Tennessee, Virginia & Georgia v. Grayson*, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382 (1886) (Court refused to realign parties who were citizens of the same state simply to preserve jurisdiction when they belonged on opposite sides of the controversy).

23. SNC would not be preempted from filing a second removal petition should a change in circumstances occur. *See Fritzlen v. Boatmen's Bank*, 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551 (1909) (Court ruled that an order remanding a case does not control the right to make a second application for removal if, because of subsequent proceedings or the conduct of the parties, the case becomes removable); *see also Covington v. Indemnity Ins. Co. of N. Am.*, 251 F.2d 930 (5th Cir.)

For the reasons expressed above, proper resolution of this novel question favors remand for lack of subject matter jurisdiction.

## IX. Consolidation

BMS argues that Bristol–Myers I should be consolidated with Bristol–Myers II and *both* actions should be remanded to state court. Since this report recommends remand of Bristol–Myers I, it is appropriate to consider the potential effect, if any, of a pre-remand consolidation of that action with Bristol–Myers II.

Under FRCP 42(a), actions may be consolidated when they involve a common question of law or fact and are pending before the court. The purpose of consolidation is to enhance efficiency and avoid the substantial danger of inconsistent adjudications. A court has discretion to consolidate, and this decision is premised on a balancing test that weighs the saving of time and effort versus inconvenience, delay or expense.

Consolidation does not merge separate lawsuits into a single action and it does not make parties in one suit parties in another. *See Johnson v. Manhattan Ry.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933). Thus, there must be separate jurisdictional bases for each action prior to any consolidation. If not then the case lacking a separate jurisdictional bases must be remanded. *Id.*

Here, subject matter jurisdiction is proper in Bristol–Myers II while it does not exist for Bristol–Myers I; therefore, this court is without authority to order the two consolidated.[24] Because Bristol–Myers II has its own jurisdictional bases it is not vulnerable remand. To consolidate an action with a proper jurisdictional basis with one that does not and then order a remand of both would be contrary to the very principles and purposes behind the laws of jurisdiction and consolidation. Alternatively, even if circumstances did exist for consolidation of these two actions, the motion to consolidate in the instant case becomes moot with the decision to remand Bristol–Myers I.

## X. Recommendations

The motion to remand the action designated herein as Bristol–Myers I should be granted for want of subject matter jurisdiction and the action remanded.

The motion to consolidate the actions designated herein as Bristol–Myers I and Bristol–Myers II should be denied as moot.

## OBJECTIONS

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R.CIV.P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

March 9, 1999.

(implicitly recognizing that a second removal is proper following a change in circumstances) *cert. denied,* 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958).

**24.** Federal courts have addressed in a number of cases the converse of the consolidation issue encountered in the instant case. They have consistently held that consolidation of a case lacking a jurisdictional basis with one that is jurisdictionally proper case cannot cure a case's jurisdictional infirmities. *See, e.g., McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982) (consolidation of jurisdictionally deficient claim with jurisdictionally proper claim does not cure jurisdictional defects) (citations omitted).